UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

In re

STRATEGIES 360, INC.,

Debtor.

No. 23-12303-TWD

DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION

IMPORTANT: THIS DISCLOSURE STATEMENT CONTAINS INFORMATION RELATED TO THE PROPOSED PLAN OF REORGANIZATION WITH RESPECT TO STRATEGIES 360, INC. (THE "DEBTOR"):

PLEASE READ THIS DOCUMENT WITH CARE. THIS DOCUMENT SUMMARIZES THE TERMS OF THE DEBTOR'S PROPOSED PLAN OF REORGANIZATION. THE DEBTOR MAY CONTINUE TO NEGOTIATE PAYMENT TERMS WITH ITS CREDITORS, AND THE SPECIFIC TREATMENT OF CLAIMS MAY CHANGE AS A RESULT, BUT THE DEBTOR BELIEVES THAT THE PAYMENT TERMS WHICH THE DEBTOR WILL ASK THE COURT TO APPROVE WILL NOT BE LESS FAVORABLE THAN THOSE DESCRIBED HEREIN.

TO ALL PARTIES IN INTEREST:

On November 27, 2023 (the "Petition Date"), the Debtor filed the above-captioned bankruptcy case (the "Bankruptcy Case"). The Bankruptcy Case is pending before the above-captioned court (the "Bankruptcy Court").

This Disclosure Statement is submitted by the Debtor and contains information with respect to Debtor's proposed Plan of Reorganization (the "Plan"). Pursuant to § 1125 of the Bankruptcy Code, this Disclosure Statement is being distributed to you along with a copy of the proposed Plan to allow you to make an informed decision in exercising your right to accept or reject the proposed Plan. This

DEBTOR'S PLAN OF REORGANIZATION– Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

6m07em01pc

Case 23-12303-TWD    Doc 125    Filed 01/04/24    Ent. 01/04/24 16:25:31    Pg. 1 of 17

Disclosure Statement has been approved by order of the Court pursuant to § 1125 of the Bankruptcy Code as containing information of a kind, and in sufficient detail, as far as is reasonably practicable under the circumstances, that would enable a hypothetical reasonable investor to make an informed judgment about the Plan.  In the event of inconsistencies between the Plan and the Disclosure Statement, however, the terms of the Plan shall control.  The Court's approval of this Disclosure Statement does not constitute an endorsement of the proposed Plan by the Court.

THE ONLY REPRESENTATIONS THAT ARE AUTHORIZED OR THAT MAY BE MADE CONCERNING THE DEBTOR, THE VALUE OF ASSETS, OR THE PLAN ARE CONTAINED IN THIS DISCLOSURE STATEMENT.  ANY FINANCIAL INFORMATION CONTAINED HEREIN OR INCORPORATED BY REFERENCE HAS BEEN PREPARED BY THE DEBTOR'S MANAGEMENT AND PROFESSIONAL ADVISORS AND IS EFFECTIVE AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED.  THE READER SHOULD NOT INFER OR ASSUME THAT THERE HAVE BEEN NO CHANGES IN THE FACTS SET FORTH HEREIN SINCE THE DATE HEREOF.

FINANCIAL INFORMATION, WHILE PRESENTED WITH NUMERICAL SPECIFICITY, IS NECESSARILY BASED UPON A VARIETY OF ESTIMATES AND ASSUMPTIONS THAT, ALTHOUGH CONSIDERED REASONABLE AND PRUDENT BY MANAGEMENT, MAY NOT BE REALIZED AND WILL REMAIN SUBJECT TO INHERENT UNCERTAINTIES.  THE FINANCIAL INFORMATION HAS NOT BEEN SUBJECTED TO AN AUDIT AND FOR THAT REASON THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT INACCURACY.  HOWEVER, GREAT EFFORT HAS BEEN MADE TO ENSURE THAT ALL SUCH INFORMATION IS FAIRLY REPRESENTED.

The Plan provides for full payment of all creditors from income generated from the Debtor's operations.  The Debtor urges you to accept the proposed Plan and to promptly return your completed ballot to enable your vote to be counted.

## ARTICLE I.
## DEFINITIONS

Terms used in this Disclosure Statement not specifically defined herein or in the Bankruptcy Code shall be defined as set forth in the Plan that accompanies this Disclosure Statement.  In particular, certain capitalized terms shall have the meanings ascribed for such terms in Section II of the Plan.

## ARTICLE II.
## BACKGROUND INFORMATION

A.  **Historical Background and Events Leading to Bankruptcy Filing**

**1.    The Debtor's History and Operations.**  The Debtor is a full-service communications firm with offices in eleven states, the District of Columbia, and British Columbia.  Through its more

DEBTOR'S PLAN OF REORGANIZATION– Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

6m07em01pc

Case 23-12303-TWD    Doc 125    Filed 01/04/24    Ent. 01/04/24 16:25:31    Pg. 2 of 17

than 140 employees as of the Petition Date, the Debtor is an industry leader in providing communication services to a variety of clients, including strategic communications, crisis communications, and reputation management. In addition, the Debtor assists clients in research, governmental relations, public affairs, and advocacy in an array of contexts.

The Debtor, then named Dotzauer and Associates, Inc., was founded by Ronald D. Dotzauer ("Dotzauer") in 1985. For almost 40 years, Dotzauer has led the Debtor to become the largest public relations firm in Washington State, growing from one office in Seattle to 18 offices throughout the United States and British Columbia. The Debtor's clients include nonprofit organizations, public agencies, and Fortune 100 companies in a wide range of industries. The Debtor assists its clients in addressing the most urgent matters facing the Western United States including climate change, water rights, population migration, and technological change.

**2. The Debtor's Founder.** Dotzauer is a sought-after strategist who has been the driving force behind the Debtor since he founded the company. Dotzauer currently serves as Chief Executive Officer and Chair of the Board of Directors. Dotzauer is a highly engaged executive and involved in all key decisions of the Debtor including but not limited to finance, operations, and strategic direction. Likewise, Dotzauer is a key figure in the creation of client strategy, business development, hiring, and expansion.

Prior to founding the Debtor, Dotzauer served as Naval Corpsman in Vietnam. Returning home as a combat veteran, he became the youngest elected county official in Washington State. Over his more than 50 years in politics, Dotzauer has directed successful political campaigns at all levels, including United States senators and Washington state governors. Dotzauer frequently appears and comments on political and cultural issues for a variety of local and national outlets. In addition to assisting countless organizations in strategic and crisis communications, Dotzauer has served as a key advisor to companies, public agencies, and non-profit organizations in strategic planning and development.

**3. Company's Financial History.** Over the last five years, Strategies 360's revenues have grown from $30 million to $48 million, with EBITDA ranging from $239,436 to $2,372,746, with a 5-year average of $1.3 million. In 2023, prior to the Petition Date, the Debtor implemented cost saving strategies that will result in an annual $3 million in expense reduction going forward.

**4. Prepetition Plan to Transition to ESOP.** In February 2023, the Debtor began taking steps to create an Employee Stock Ownership Plan (an "ESOP") pursuant to which the Debtor would transition to an employee-owned company with a target implementation date of early 2024. This process was delayed by the disruptive litigation faced by the company described below.

**5. Events Leading to Chapter 11 Filing.** On October 19, 2023, Eric Sorensen ("Sorensen") obtained a judgment in the approximate amount of $6.1 million against the Debtor and Dotzauer (the "Sorensen Judgment"). The Sorensen Judgment is the result of years of litigation by Sorensen against the Debtor and Dotzauer. Sorensen was previously an employee of and equity holder in the Debtor, and was removed as president of the Debtor in 2018, for cause.

DEBTOR'S PLAN OF REORGANIZATION– Page 3

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Case 23-12303-TWD    Doc 125    Filed 01/04/24    Ent. 01/04/24 16:25:31    Pg. 3 of 17

As part of the Debtor's termination of its relationship with Sorensen, the Debtor and Dotzauer agreed to pay Sorensen $6 million. After a series of payments, agreements, disputes, and litigation, Sorensen filed the complaint that ultimately resulted in the Sorensen Judgment in July, 2023. Thereafter, Sorensen filed a motion to appoint a receiver over the assets of the Debtor, scheduled for hearing on November 28, 2023.

To avoid the irreparable harm to the Debtor and its creditors that would flow from the appointment of a Receiver, the Debtor filed this case to allow it to restructure the Sorensen Judgment so that it can move forward, implement the planned ESOP and pay all creditors in full.

**B.   Significant Postpetition Events**

   **1.   First Day Motions.** On December 1, 2023, the Court entered orders (a) authorizing the Debtor to pay prepetition wages, benefits and related expenses, (b) approving the Debtor's proposed adequate assurance to utility providers pursuant to Bankruptcy Code § 366 and (c) authorizing the Debtor's continued use of its prepetition bank accounts and cash management system. Docket Nos. 38, 40 and 39.

   **2.   Cash Collateral.** On December 4, 2023, the Court entered an order authorizing the Debtor's use of prepetition cash collateral and the proceeds thereof and approving proposed adequate protection on an interim basis. The Court scheduled the hearing on final use of cash collateral for January 8, 2024, with a budget to be filed on or before December 28, 2023. Docket No. 42.

   **3.   Claims Bar Date**. A deadline for the filing of claims was set as January 26, 2024. Docket No. 62.

   **4.   Formation of Unsecured Creditors Committee.** On December 13, 2023, the United States Trustee filed a notice of the appointment of an Unsecured Creditors Committee pursuant to Bankruptcy Code § 1102. Docket No. 52.

   **5.   Employment of Professionals.** On ____, the Court approved the Debtor's employment of Bush Kornfeld LLP as its bankruptcy counsel. Docket No. ___. On ___, the Court approved the Committee's employment of DBS Law. Docket No. ___.

   **6.   Key Employee Retention Motion**. On ____, the Court approved the Debtor's motion to implement an employee retention plan (the "KERP") designed to ensure that the Debtor's employees, which are the most critical part of its business, are incentivized to remain with the Debtor through the company's reorganization and emergence from bankruptcy. Docket No. ___.

   **7.   Lease Rejection Motion.** On ___, the Court approved the Debtor's motion to reject three real property leases in Irvine, Los Angeles and San Diego, California. Docket No. ___.

   **8.   Creation of Executive Management Committee to Transition to ESOP.** The Debtor's bankruptcy filing was an unexpected and distressing event to many of the Debtor's employees, resulting in a number of employees exiting the company. The Debtor's employees and the

DEBTOR'S PLAN OF REORGANIZATION– Page 4

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

6m07em01pc

Case 23-12303-TWD    Doc 125    Filed 01/04/24    Ent. 01/04/24 16:25:31    Pg. 4 of 17

client relationships that they develop have always been the backbone of the Debtor's company. Thus, in addition to the KERP, it was critical that the Debtor confirm its commitment to transition to an ESOP and to create a role for the employees to have a meaningful voice in shaping the company through its reorganization and ultimate employee-owned structure. To this end, in accordance with Section 3.15 of the Debtor's Bylaws, the Debtor's board agreed to the immediate formation of an Executive Management Committee (the "EMC") consisting of leads of the Debtor's departments and state offices and has formalized the duties of the EMC. The EMC will serve until formally transitioned to an ESOP committee, or until an ESOP committee satisfactory to the EMC is formed, to ensure that the formation and implementation of the ESOP proceeds in accordance with the Debtor's intention and in accordance with ESOP rules and regulations.

## ARTICLE III.
## FINANCIAL INFORMATION

**A.    Debtor's Assets**

The Debtor filed its schedules of assets and liabilities (the "Schedules") and its Statement of Financial Affairs on the Petition Date. The Debtor's Schedules reflect the following assets held by the Debtor:

**1.    Non-Real Property-Related Assets**

| Asset | Scheduled Value |
|---|---|
| Bank Accounts | $2,192,786 |
| Deposits | $190,272 |
| Accounts receivable | $5,599,581 |
| 100% Membership Interest Political Group LLC | Unknown |
| 100% Membership Interest S360 M&A Holding Group Inc. | Unknown |
| Office furniture, fixtures and equipment (Cost) | $676,365.21 |
| Real Estate Leases | See below |
| Domain names: strategies360.net strategies360.info strategies360.org strategies30.ca westernconsultants.com | Unknown |
| Websites: strategies360.com resources.strategies360.com | Unknown |
| Notes receivable | $100,000 |

DEBTOR'S PLAN OF REORGANIZATION– Page 5

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Case 23-12303-TWD    Doc 125    Filed 01/04/24    Ent. 01/04/24 16:25:31    Pg. 5 of 17

| Asset | Scheduled Value |
|---|---|
| Breach of employment and purchase contract claim against the Trujillos | See below |
| Season tickets, Seattle Mariners | $22,080 |

  **2.**  **Debtor Asserted Trujillo Claims.** The Debtor's claims against the Trujillos arise from actions taken by the Trujillos after the Debtor acquired Trujillos' government relations business in New Mexico.

  **3.**  **Real Property-Related Assets.** The Debtor is the lessee of real property at the following locations. The value of the Debtor's interest in the leasehold assets has not been determined.

| |
|---|
| 601 New Jersey Ave NW<br>Washington, DC 2001 |
| 850 Richards Street, #300<br>Honolulu, HI 96813 |
| 800 W Main Street #1250<br>Boise, ID 83702 |
| 10801 W Charleston Bvd #520<br>Las Vegas, NV 89135 |
| 240 N Broadway St. #215<br>Portland, OR 97227 |
| 919 Congress Ave #1100<br>Austin, TX 78701 |
| 1018 Capitol Way S #204<br>Olympia, WA 98501 |
| 20 Pacifica # 260<br>Irvine, CA 92618 |
| 1505 Westlake Ave N #900 and 1000<br>Seattle, WA 98109 |

**B.**  **Debtor's Liabilities**

  **1.**  **Secured Claims.**

    **a.**  **KeyBank.** As of November 22, 2023 the Debtor was obligated to KeyBank National Association ("KeyBank") in the amount of $3,665,639 (the "KeyBank Loan") secured by a blanket security interest in the Debtor's personal property pursuant to a security agreement and UCC-1 financing statement on file with the Washington State Department of Licensing, Filing No. 2019-274-7933-1.

DEBTOR'S PLAN OF REORGANIZATION– Page 6

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Case 23-12303-TWD  Doc 125  Filed 01/04/24  Ent. 01/04/24 16:25:31  Pg. 6 of 17

**2. Non-Priority General Unsecured Claims.**

   **a. Vendor Claims.** The Debtor's Schedules reflect the following claimants asserting the following unsecured claims:

| Claimant | Scheduled | Proof of Claim |
|---|---|---|
| Aaryn Ehlers | $5,145 | |
| Arizona News Service | $4,851 | |
| Barbara Haugen | $2,125 | |
| Basis Global Technologies | $65,189 | |
| Brave the Woods | $8,800 | |
| Christopher J. Posey | $13,286 | |
| Crash Eleven Productions | $1,600 | |
| EDJE Consulting, LLC (Randall Edwards) | $3,000 | |
| Eidolon | $78,473 | |
| ERP Buddies Inc. | $1,200 | |
| ESP | $6,435 | |
| Facebook | $133,075 | |
| Google | $87,568 | |
| Hooligan | $8,300 | |
| In the Bag Promotions | $67,868 | |
| Jago Inc. | $310,460 | |
| KGS Research (Revolution Capital) | $37,128 | |
| KnowBe4 | $3,387 | $3,387 |
| Kratz Consulting LLC | $1,281 | |
| Live Strategies Group | $142,650 | |
| MAP Retirement USA LLC | 300 | |
| Mary's Rose Video Mktg | $6,622 | |
| MOI-DC | $17,713 | |
| Nextmark, Inc. (Bionic Ads) | $675 | $675 |
| Olympia Consulting Inc. | $2,500 | |
| Pacific Printing | $288 | |
| Pride Electric Inc. | $2,304 | |
| RubinBrown LLP | $13,000 | |
| Sago (Schlesinger Group) | $6,338 | |
| Shan Tsutsui | $4,000 | |
| Smith Bunday Berman | $13,100 | $13,100 |
| Strategic Research Assoc | $22,585 | |
| Team Labs, Inc. | $7,002 | |
| Teledata Technologies | $1,464 | |
| Tempest Technologies LLC | $11,692 | |
| The Knowledge Mill, LLC | $11,748 | |

DEBTOR'S PLAN OF REORGANIZATION– Page 7

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

qm07em01pc

Case 23-12303-TWD    Doc 125    Filed 01/04/24    Ent. 01/04/24 16:25:31    Pg. 7 of 17

| Claimant | Scheduled | Proof of Claim |
|---|---|---|
| Treasure Valley Litho | $11,254 | |
| Trout Jousters, LLC | $4,800 | |
| Waldron Strategies Inc. | $3,500 | |
| | $1,122,706.00 | |

**b.    John Oceguera.** John Oceguera ("Oceguera") filed a proof of claim asserting a claim in the amount of $2,370,000 (the "Oceguera Claim") of which there are three components. The first component in the amount of $100,000 relates to a finders' fee due under the Oceguera's employment contract with the Debtor (the "Oceguera Employment Contract"). The second component in the amount of $2,000,000 relates to an amount that Dotzauer is obligated to pay to Oceguera upon the Debtor's creation of an Employee Stock Option Plan by December 31, 2024. This obligation arises from a stock purchase agreement (the "Oceguera Stock Agreement") among Oceguera, Dotzauer and the Debtor. The ESOP has not yet been created and the payment by Dotzauer to Oceguera is not yet due. The third component is for $270,000 representing interest on a loan that Oceguera has incurred with respect to the loan he obtained to purchase the stock that is the subject of the Oceguera Stock Agreement. The Debtor need not take a position at this time as to whether the second and third components of the Oceguera Claim are obligations of the Debtor as the Debtor's intention is to assume the Oceguera Employment Contract and the Oceguera Stock Agreement and perform the Debtor's obligations thereunder.

**c.    Sorensen Judgment.** The amount of the Sorenson Judgment was approximately $6,163,769 as of the Petition Date.

**d.    Trujillo Litigation.** The Trujillos assert claims against the Debtor, Dotzauer and Joshua Rosen, an employee of the Debtor, arising from the Trujillos employment by the Debtor after the Debtor purchased the Trujillos' government relations business located in New Mexico.

## ARTICLE IV.
## PROVISIONS FOR SATISFYING CLAIMS AND SPECIFYING TREATMENT OF EACH CLASS UNDER THE PLAN

The treatment of all Allowed Claims and Allowed Interests in the Plan is as follows:

**A.    Unclassified Claims**

The Plan establishes six Classes of Claims and one Class of Interests, and certain other Claims are Unclassified Claims pursuant to applicable provisions of the Bankruptcy Code. If the Plan is confirmed by the Court and becomes effective, the Class into which each Allowed Claim and Allowed Interest fits will determine the manner in which such claim or interest will be treated.

DEBTOR'S PLAN OF REORGANIZATION– Page 8

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Case 23-12303-TWD    Doc 125    Filed 01/04/24    Ent. 01/04/24 16:25:31    Pg. 8 of 17

1. **Unclassified Claims**

   a. **Administrative Expense Claims**

   As defined in the Plan, Administrative Expense Claims are Allowed Claims for costs or expenses of the Chapter 11 Case that are allowed under sections 503(b) and 507(a)(1) of the Bankruptcy Code. Claims incurred in the ordinary course of the Debtor's business following the Petition Date shall be paid in the ordinary course of business in accordance with the terms and conditions of the relevant agreements governing such obligations. Claims for professional fees and expenses shall be paid on the later of the Effective Date or the date each such Claim becomes an Allowed Claim, unless the Holder of such Claim agrees to alternative treatment.

   b. **Priority Tax Claims**

   As defined in the Plan, Priority Tax Claims are Allowed Claims of Taxing Agencies that are entitled to priority in accordance with section 507(a)(8) of the Bankruptcy Code. Priority Tax Claims include the principal portion of the applicable tax and interest accrued thereon through the Effective Date but do not include any penalties. The Debtor does not believe there are any Priority Tax Claims in this case.

**B. Classified Claims and Interests**

   1. **Class 1: Allowed Secured Claim of KeyBank.**

   **Impaired.** Class 1 consists of the Allowed Secured Claim of KeyBank (the "Class 1 Claim"). The Class 1 Claim shall be paid as follows:

   a. **Allowance of Claim.** The Class 1 Claim shall be allowed or disallowed, as the case may be, whether prior to or following Confirmation, in such amount as to which the Debtor may agree or the Court may approve following Notice and Hearing. All non-principal amounts owing as of Confirmation shall be capitalized and added to the principal balance of the Class 1 Claim.

   b. **Retention of Security Interest.** The Holder of the Class 1 Claim shall retain the Key Bank Security Interest until the Class 1 Claim has been paid in full.

   c. **Payment:** The Class 1 Claim shall be paid in full in equal monthly payments over a period of five years.

   d. **Interest:** The Class 1 Claim shall accrue interest at the variable non-default rate identified in the KeyBank Note.

   2. **Class 2: Allowed Sorensen Claim.**

   **Impaired.** Class 2 consists of the Allowed Sorensen Claim (the "Class 2 Claim"). The Holder of the Class 2 Claim shall be paid as follows:

DEBTOR'S PLAN OF REORGANIZATION– Page 9

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Case 23-12303-TWD    Doc 125    Filed 01/04/24    Ent. 01/04/24 16:25:31    Pg. 9 of 17

The Class 2 Claim shall bear interest at the rate of 12% per annum and shall be paid in full through 60 equal monthly payments, commencing on the 20th day of the first full month following the Effective Date and payable on the 20th day of each subsequent month.

3. **Class 3: Trujillo Claim**

**Impaired.** Class 3 consists of the Trujillo Claim (the "Class 3 Claim"), which shall be treated as follows:

The automatic stay contained Bankruptcy Code § 362 shall cease on the 30th day following the Effective Date. The Debtor and the Trujillos shall adjudicate their claims against each other in the First Judicial District of Santa Fe County in New Mexico, under the law applicable to their disputes, including all claims arising under or related to the Asset Purchase Agreement (and any revisions or amendments thereto) among the Trujillos, The Emissary Group, LLC, and S360 M&A Holding Group Inc and/or the Debtor.

Upon any final, non-appealable judgment being entered against S360 M&A Holding Group Inc. or the Debtor, or other resolution of the claims by agreement, settlement, or otherwise (the "Final Trujillo Resolution") that results in a net affirmative liability of the Debtor to the Trujillos, such net affirmative liability shall constitute an Allowed Claim in favor of the Trujillos, to be paid as follows: (1) to the extent that funds are paid on account of the Allowed Claim by the Debtor's insurance carrier, such funds will be paid to the Trujillos within ten days of the insurer's issuance of such payment; (2) if the Allowed Claim is $250,000 or less and is not to be paid by the Debtor's insurance carrier, the Debtor shall pay the Allowed Claim upon its terms; or (3) if the Allowed Claim is greater than $250,000 and is not to be paid by the Debtor's insurance carrier, the Debtor shall pay the Allowed Claim by making monthly payments on the first day of each month over a period of sixty months, commencing the first month following the Final Trujillo Resolution. Each payment shall be equal to the amount of the Debtor's Allowed Claim, divided by sixty. The Trujillos shall be entitled to the same payment terms as the Debtor if the Final Trujillo Resolution results in net affirmative amount owed to the Debtor by the Trujillos.

4. **Class 4: Oceguera Claim.** The Debtor will assume the Oceguera Employment Contract and the Oceguera Stock Agreement as of the Effective Date and will perform such agreements in accordance with their terms.

5. **Class 5: Allowed General Unsecured Claims.**

**Impaired.** Class 5 consists of Allowed General Unsecured Claims that are not Administrative Convenience Claims (each, a "Class 5 Claim"). Class 5 Claims shall be paid in full as follows:

Interest shall accrue on the Class 5 Claims at the federal judgment rate. Within sixty days of the Effective Date, the Debtor shall make a payment of $200,000 (the "Initial Class 5 Payment") to be distributed to Holders of Class 5 Claims on a *pro rata* basis. The Debtor will make a $200,000 payment on June 25, 2023 (the "Second Class 5 Payment") to be distributed to Holders of Class 5

DEBTOR'S PLAN OF REORGANIZATION– Page 10

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

6m07em01pc

Case 23-12303-TWD    Doc 125    Filed 01/04/24    Ent. 01/04/24 16:25:31    Pg. 10 of 17

Claims on a *pro rata* basis. Thereafter, beginning on September 25, 2023, the Debtor will make 14 equal quarterly payments totaling the amount necessary to satisfy the Class 5 Claims, with each such payment to be distributed to Holders of Class 5 Claims on a *pro rata* basis.

Any Holder of Class 5 Claim may opt to reduce its Allowed General Unsecured Claim to $10,000 and be treated as a Class 6 Claim, rather than a Class 5 Claim (the "Class 6 Opt-In").

**6.    Class 6: Allowed Administrative Convenience Claims.**

**Impaired.** Class 6 consists of Allowed Administrative Convenience Claims (each, a "Class 6 Claim"). The Debtor shall pay all Allowed Administrative Convenience Claims within 30 days following the Effective Date.

**7.    Class 7: Allowed Interests in the Debtor**

All Interests in the Debtor shall be retained by the Holders of such Interests as of the Petition Date. No distributions shall be made to Holders of Interests on account of such Interests until Classes 1 through 6 have been paid in full, with the exception that distributions to Holders of Interests relating to pass through income tax shall be permitted.

### ARTICLE V.
### MEANS FOR EXECUTION OF THE PLAN

**A.    Sources of Funds for Distribution**

The Debtor will fund the distributions under the Plan from its ongoing operations.

**B.    Continued Corporate Existence and Vesting of Assets in the Debtor**

On the Effective Date, the Debtor shall continue to exist in accordance with the laws in the jurisdiction in which it was formed and pursuant to its Articles of Incorporation and Bylaws in effect prior to the Effective Date, except to the extent such documents are amended under the Plan. Except as otherwise provided in the Plan, on and after the Effective Date, each item of property of the Debtor, including all claims, rights and causes of action and any property acquired by the Debtor shall vest in the Debtor free and clear of all Claims, liens, charges, other encumbrances and interests except liens, charges and other encumbrances which the Debtor is required to grant or continue pursuant to Article IV of the Plan. On and after the Effective Date, the Debtor may operate its business and may use, acquire and dispose of property without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by the Plan or the Confirmation Order.

**C.    Cancellation of Indebtedness**

On the Effective Date, except for the purpose of evidencing a right to distribution under the Plan, any notes or other instruments or documents evidencing or creating any indebtedness or

DEBTOR'S PLAN OF REORGANIZATION– Page 11

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Case 23-12303-TWD    Doc 125    Filed 01/04/24    Ent. 01/04/24 16:25:31    Pg. 11 of 17

obligations of, or interest in, the Debtor, except assumed executory contracts, and/or such notes or other instruments evidencing indebtedness or obligations of the Debtor that are unimpaired, reinstated, or amended and restated under the Plan, shall be cancelled and terminated and of no further force or effect.

**D.    Post-Confirmation Professional's Services**

Bush Kornfeld LLP shall continue to serve as the Debtor's counsel and the Debtor shall have authority to pay its Professionals post-confirmation fees and costs without further Court order.

**E.    Retention of Claims and Causes of Action**

Unless specifically waived in the Plan, all rights, claims and causes of action, whether equitable or legal, of the Debtor against all persons are reserved for and assigned to the Debtor, including without limitation all rights, claims and causes of action of the Debtor arising under §§ 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or under applicable non-bankruptcy law, for the recovery of avoidable preferences, fraudulent transfers or other conveyances.

**F.    Plan Pendency Injunction**

Upon Confirmation of the Plan, any Holder of an Allowed Claim in the Bankruptcy Case that is provided for under the Plan shall be temporarily enjoined from proceeding against any officer, director, shareholder, employee, or other responsible person of Debtor, individually, for the collection of all or any portion of such Holder's Allowed Claim paid or to be paid by the Debtor under the Plan (the "Plan Pendency Injunction"). The Plan Pendency Injunction shall remain in effect only for so long as the Debtor complies with the terms of the Plan. Any violation of the Plan that remains uncured for thirty (30) days after receipt by the Debtor of written notice from any party affected by such violation, shall automatically and without order of the Court result in the dissolution of the injunction as to said affected party.

## ARTICLE VI.
## LIQUIDATION ANALYSIS

The Bankruptcy Code requires that a creditor with a right to vote either accept the Plan, or that such creditor receive under the Plan at least as much as it would receive if the Debtor's assets were liquidated in and the proceeds distributed under a Chapter 7 liquidation. This is generally known as the "best interests" test. To apply the test, the Debtor's assets are valued at the dollar amount that would be generated from their distressed liquidation in the context of a Chapter 7 case by a trustee appointed by the Bankruptcy Court.

The Debtor's Plan proposes to pay all Allowed Claims in full, with interest, and thus, satisfies the best interests test.

DEBTOR'S PLAN OF REORGANIZATION– Page 12

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

gm07em01pc

Case 23-12303-TWD    Doc 125    Filed 01/04/24    Ent. 01/04/24 16:25:31    Pg. 12 of 17

# ARTICLE VII.
# EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Plan constitutes a motion by the Debtor to reject the executory contracts and unexpired nonresidential real property leases identified in Exhibit A to the Plan pursuant to Bankruptcy Code § 365(a) (each, a "<u>Rejected Contract</u>"). The Plan constitutes a motion by the Debtor to assume all other executory contracts and unexpired nonresidential real property leases of the Debtor (each an "<u>Assumed Contract</u>"). The Debtor believes that cure is owed with respect to the Assumed Contracts identified in Exhibit B to the Plan in the amounts identified therein and proposes to pay those cure amounts within 15 days of the Effective Date.

The Plan establishes a deadline for parties to file claims based upon the rejection of an executory contract or unexpired lease. Failure to timely file a proof of claim will result in the disallowance of any such claim. Any claim arising from the rejection of an executory contract or unexpired lease is a Class 5 Claim or Class 6 Claim, as the case may be, to the extent it is an Allowed Claim.

# ARTICLE VIII.
# TAX CONSEQUENCES

Holders of Claims and Interests will report any payments received under the Plan in accordance with their normal method of accounting.

# ARTICLE IX.
# RISK FACTORS

Distributions to creditors contemplated under the Plan are contingent upon many assumptions, some or all of which could fail to materialize and preclude the Plan from becoming effective or reduce anticipated distributions. Most important, however, is that the Plan is subject to approval by the various classes of creditors entitled to vote under the Bankruptcy Code and to confirmation of the Plan by the Bankruptcy Court. No assurance can be given that the Plan will be accepted by the requisite number and amount of creditors or confirmed by the Court. In that event, due to the costs and uncertainties inherent in a modified plan of reorganization or a conversion and liquidation under Chapter 7, all creditors of the estate face substantial risk that their recovery under such alternative circumstances may be substantially less favorable than their recovery provided for by the Plan.

# ARTICLE X.
# CONFIRMATION OF THE PLAN

A. **Voting Procedures**

A ballot to be used for voting your acceptance or rejection of the Debtor's Plan of Reorganization is being mailed to you together with this Disclosure Statement and Plan. Holders of claims should read the instructions carefully, complete, date and sign the ballot, and transmit it in the envelope enclosed. IN ORDER TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED AT

DEBTOR'S PLAN OF REORGANIZATION– Page 13

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Case 23-12303-TWD    Doc 125    Filed 01/04/24    Ent. 01/04/24 16:25:31    Pg. 13 of 17

THE INDICATED ADDRESS NOT LATER THAN 5:00 P.M. ON _____, 2024. FAILURE TO VOTE OR A VOTE TO REJECT THE PLAN WILL NOT AFFECT THE TREATMENT TO BE ACCORDED A CLAIM OR INTEREST IF THE PLAN NEVERTHELESS IS CONFIRMED.

If more than one-half in number of claimants voting and at least two-thirds in amount of the allowed claims of such claimants in each class of claims vote to accept the Plan, such classes will be deemed to have accepted the Plan. If at least two-thirds in amount of the shares voted in a class of equity interests are voted to accept the Plan, such Class will be deemed to have accepted the Plan. For purposes of determining whether a class of claims or interests has accepted or rejected the Plan, only the votes of those who have timely returned their ballots will be considered.

**B.      Hearing on Confirmation**

The hearing on confirmation of the Plan has been set for _____, 2024, before the Honorable Timothy W. Dore, United States Bankruptcy Judge, in U.S. Bankruptcy Court in Seattle, Washington. The Bankruptcy Court shall confirm the Plan at that hearing only if certain requirements, as set forth in § 1129 of the Bankruptcy Code, are satisfied.

**C.      Feasibility**

The Debtor must also establish that confirmation of the Plan is not likely to be followed by the Debtor's liquidation, or the need for further financial reorganization. For purposes of determining whether the Plan meets this requirement, the Debtor has prepared the projections of the Reorganized Debtor's future performance and its ability to meet its obligations under the Plan (the "Projections"). The Projections, and the assumptions on which they are based, are attached as Exhibit A to this Disclosure Statement. The Projections are based on the assumption that the Plan will be confirmed by the Bankruptcy Court and that the Effective Date of the Plan will be no later than _____. Based upon the Projections, the Debtor believes that confirmation of the Plan is not likely to be followed by the liquidation or further reorganization of the Debtor. To the extent necessary, the Debtor will present additional evidence at the hearing on Confirmation in support of such a finding.

**D.      Treatment of Dissenting Classes of Creditors**

The Bankruptcy Code requires the Bankruptcy Court to find that the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan. Upon such a finding, the Bankruptcy Court may confirm the Plan despite the objections of a dissenting class. The Debtor has requested that the Court confirm the Plan even if creditors holding claims in impaired classes do not accept the Plan.

**E.      Effect of Confirmation**

Confirmation of the Plan shall operate on the Effective Date as a discharge of the Debtor from all claims and indebtedness that arose before the Effective Date, except for those unclassified claims that the Debtor agrees to pay as a continuing obligation. All such discharged claims and indebtedness shall be satisfied by the cash payment or other consideration provided under the Plan. Upon

DEBTOR'S PLAN OF REORGANIZATION– Page 14

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Case 23-12303-TWD    Doc 125    Filed 01/04/24    Ent. 01/04/24 16:25:31    Pg. 14 of 17

Confirmation, all property of the Debtor's estate shall be free and clear of all claims and interests of creditors, except as otherwise provided in the Plan or the order of the Bankruptcy Court confirming the Plan. The Debtor shall be vested with all assets of the Debtor's estate. The provisions of the Plan shall bind the Debtor, and all other parties in interest, including any creditor of the Debtor, whether or not such creditor is impaired under the Plan and whether or not such creditor has accepted the Plan.

F. **Consequences of the Failure to Confirm the Plan**

In the event the Court declines to confirm the Debtor's Plan, whether due to a failure of creditor support or otherwise, a liquidation might ultimately result, either through a revised Plan under Chapter 11 or conversion of this Chapter 11 case to a bankruptcy under Chapter 7 of the Bankruptcy Code in which case creditors may receive a reduced recovery.

RESPECTFULLY SUBMITTED this 4th day of January, 2024.

STRATEGIES 360, INC.

By /s/ Ron Dotzauer
   Ron Dotzauer
   Its Chief Executive Officer

DEBTOR'S PLAN OF REORGANIZATION– Page 15

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

qm07em01pc

Case 23-12303-TWD   Doc 125   Filed 01/04/24   Ent. 01/04/24 16:25:31   Pg. 15 of 17

# **EXHIBIT A**

*Projections for 2024; Years 2025-2028 To Be Provided*

| Financial Row | Jan-24 | Feb-24 | Mar-24 | Apr-24 | May-24 | Jun-24 | Jul-24 | Aug-24 | Sep-24 | Oct-24 | Nov-24 | Dec-24 | Total 2024 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total - Revenue** | 2,608,000.22 | 2,743,009.49 | 2,621,334.49 | 2,584,309.49 | 3,649,477.66 | 3,056,605.52 | 2,963,212.00 | 2,797,242.20 | 2,981,004.61 | 3,272,696.21 | 3,159,706.67 | 2,612,614.31 | 35,049,212.87 |
| Cost Of Sales | | | | | | | | | | | | | |
| 5110 - Subcontractor Costs | 212,345.00 | 258,070.00 | 220,895.00 | 165,845.00 | 200,721.27 | 168,113.30 | 162,976.66 | 153,848.32 | 163,955.25 | 179,998.29 | 173,783.87 | 143,693.79 | 2,204,245.75 |
| 5200 - Media Buy | 135,616.01 | 142,636.49 | 136,309.39 | 134,384.09 | 189,772.84 | 158,943.49 | 154,087.02 | 145,456.59 | 155,012.24 | 170,180.20 | 164,304.75 | 135,855.94 | 1,822,559.07 |
| 5500 - Client Cost | 169,520.01 | 178,295.62 | 170,386.74 | 167,980.12 | 237,216.05 | 198,679.36 | 192,608.78 | 181,820.74 | 193,765.30 | 212,725.25 | 205,380.93 | 169,819.93 | 2,278,198.84 |
| 7100 - Wages and Benefits | | | | | | | | | | | | | |
| 7110 - Wages | 1,424,800.00 | 1,504,400.00 | 1,349,800.00 | 1,650,312.38 | 1,342,100.00 | 1,349,800.00 | 1,349,800.00 | 1,472,700.00 | 1,349,800.00 | 1,349,800.00 | 1,462,500.00 | 1,349,800.00 | 16,955,612.38 |
| 7120 - Payroll tax expense | 72,700.00 | 76,700.00 | 72,700.00 | 72,700.00 | 59,100.00 | 72,700.00 | 72,700.00 | 79,300.00 | 72,700.00 | 72,700.00 | 78,700.00 | 72,700.00 | 875,400.00 |
| 7130 - Employee & Officer Benefits | 146,485.71 | 146,485.71 | 146,485.71 | 146,485.71 | 146,485.71 | 146,485.71 | 146,485.71 | 146,485.71 | 146,485.71 | 146,485.71 | 146,485.71 | 146,485.71 | 1,757,828.52 |
| Total - 7100 - Wages and Benefits | 1,643,985.71 | 1,727,585.71 | 1,568,985.71 | 1,869,498.09 | 1,547,685.71 | 1,568,985.71 | 1,568,985.71 | 1,698,485.71 | 1,568,985.71 | 1,568,985.71 | 1,687,685.71 | 1,568,985.71 | 19,588,840.90 |
| Total - Cost Of Sales | 2,161,466.74 | 2,306,587.82 | 2,096,576.85 | 2,337,707.30 | 2,175,395.87 | 2,094,721.86 | 2,078,658.17 | 2,179,611.37 | 2,081,718.50 | 2,131,889.46 | 2,231,155.26 | 2,018,355.37 | 25,893,844.56 |
| **Gross Profit** | 446,533.48 | 436,421.67 | 524,757.64 | 246,602.19 | 1,474,081.79 | 961,883.66 | 884,553.82 | 617,630.83 | 899,286.11 | 1,140,806.75 | 928,551.41 | 594,258.94 | 9,155,368.31 |
| GP% | 17.1% | 15.9% | 20.0% | 9.5% | 40.4% | 31.5% | 29.9% | 22.1% | 30.2% | 34.9% | 29.4% | 22.7% | 26.1% |
| Expense | | | | | | | | | | | | | |
| 7200 - Payroll - SG&A | 163,400.00 | 163,400.00 | 163,400.00 | 180,801.56 | 163,400.00 | 163,400.00 | 163,400.00 | 163,400.00 | 163,400.00 | 163,400.00 | 163,400.00 | 163,400.00 | 1,978,201.56 |
| 7250 - Other General and Admin | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 12,000.00 |
| 7300 - Vehicle | 13,000.00 | 13,700.00 | 13,100.00 | 5,025.00 | 10,325.00 | 7,425.00 | 6,925.00 | 6,125.00 | 7,025.00 | 8,525.00 | 7,925.00 | 5,225.00 | 104,325.00 |
| 7350 - Professional Fees | 130,000.00 | 130,000.00 | 75,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 605,000.00 |
| 7370 - Rent | 200,000.00 | 200,000.00 | 200,000.00 | 145,000.00 | 145,000.00 | 145,000.00 | 145,000.00 | 145,000.00 | 145,000.00 | 145,000.00 | 145,000.00 | 145,000.00 | 1,905,000.00 |
| 7400 - Employee Functions | 10,333.33 | 10,333.33 | 10,333.33 | 10,333.33 | 10,333.33 | 10,333.33 | 10,333.33 | 10,333.33 | 10,333.33 | 10,333.33 | 10,333.33 | 10,333.33 | 124,000.00 |
| 7450 - Dues and Subscriptions | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 420,000.00 |
| 7500 - Office Supplies and Expense | 13,600.00 | 14,300.00 | 13,600.00 | 13,400.00 | 19,000.00 | 15,900.00 | 15,400.00 | 14,500.00 | 15,500.00 | 17,000.00 | 16,400.00 | 13,600.00 | 182,200.00 |
| 7540 - Travel | 28,700.00 | 30,200.00 | 28,800.00 | 28,400.00 | 40,100.00 | 33,600.00 | 32,600.00 | 30,800.00 | 32,800.00 | 36,000.00 | 34,800.00 | 28,700.00 | 385,500.00 |
| 7550 - Telephone and Utilities | 9,100.00 | 9,600.00 | 9,200.00 | 9,000.00 | 12,800.00 | 10,700.00 | 10,400.00 | 9,800.00 | 10,400.00 | 11,500.00 | 11,100.00 | 9,100.00 | 122,700.00 |
| 7600 - Meals & Entertainment | 11,700.00 | 12,300.00 | 11,800.00 | 11,600.00 | 16,400.00 | 13,800.00 | 13,300.00 | 12,600.00 | 13,400.00 | 14,700.00 | 14,200.00 | 11,800.00 | 157,600.00 |
| 7650 - IT Expense | 20,900.00 | 21,900.00 | 21,000.00 | 20,700.00 | 29,200.00 | 24,500.00 | 23,700.00 | 22,400.00 | 23,800.00 | 26,200.00 | 25,300.00 | 20,900.00 | 280,500.00 |
| 7700 - Insurance | 14,166.67 | 14,166.67 | 14,166.67 | 14,166.67 | 14,166.67 | 14,166.67 | 14,166.67 | 14,166.67 | 14,166.67 | 14,166.67 | 14,166.67 | 14,166.67 | 170,000.00 |
| 7750 - Marketing and Development | 4,166.67 | 4,166.67 | 4,166.67 | 4,166.67 | 4,166.67 | 4,166.67 | 4,166.67 | 4,166.67 | 4,166.67 | 4,166.67 | 4,166.67 | 4,166.67 | 50,000.00 |
| 7800 - Repair & Maintenance | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600.00 |
| 7900 - Business Taxes and Licenses | 13,040.00 | 13,715.05 | 13,106.67 | 12,921.55 | 18,247.39 | 15,283.03 | 140,000.00 | 13,986.21 | 14,905.02 | 16,363.48 | 15,798.53 | 13,063.07 | 300,430.00 |
| 7950 - Contributions | 7,800.00 | 8,200.00 | 7,900.00 | 7,800.00 | 10,900.00 | 9,200.00 | 8,900.00 | 8,400.00 | 8,900.00 | 9,800.00 | 9,500.00 | 7,800.00 | 105,100.00 |
| 7960 - Lobbying Expense | 2,600.00 | 2,700.00 | 2,600.00 | 2,600.00 | 3,600.00 | 3,100.00 | 3,000.00 | 2,800.00 | 3,000.00 | 3,300.00 | 3,200.00 | 2,600.00 | 35,100.00 |
| **Total - Expense** | 678,806.67 | 684,981.71 | 624,473.34 | 532,214.77 | 563,939.05 | 536,874.69 | 657,591.67 | 524,777.88 | 533,096.69 | 546,755.15 | 541,590.20 | 516,154.74 | 6,941,256.57 |
| **Net Ordinary Income** | (232,273.18) | (248,560.04) | (99,715.69) | (285,612.58) | 910,142.74 | 425,008.97 | 226,962.16 | 92,852.96 | 366,189.42 | 594,051.61 | 386,961.21 | 78,104.20 | 2,214,111.74 |
| Other Income and Expenses | | | | | | | | | | | | | |
| Other Expense | | | | | | | | | | | | | |
| 9800 - Interest Expense | 86,746.09 | 86,437.70 | 86,124.29 | 85,805.78 | 85,205.14 | 84,608.70 | 84,016.44 | 83,428.33 | 82,844.33 | 82,264.42 | 81,688.57 | 81,116.75 | 1,010,286.54 |
| 9801 - FX Gain/Loss | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 9900 - Other Income/ Expenses - Miscellaneous | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total - Other Expense | 86,746.09 | 86,437.70 | 86,124.29 | 85,805.78 | 85,205.14 | 84,608.70 | 84,016.44 | 83,428.33 | 82,844.33 | 82,264.42 | 81,688.57 | 81,116.75 | 1,010,286.54 |
| Net Other Income | (86,746.09) | (86,437.70) | (86,124.29) | (85,805.78) | (85,205.14) | (84,608.70) | (84,016.44) | (83,428.33) | (82,844.33) | (82,264.42) | (81,688.57) | (81,116.75) | (1,010,286.54) |
| **Net Income** | (319,019.27) | (334,997.75) | (185,839.99) | (371,418.36) | 824,937.60 | 340,400.27 | 142,945.72 | 9,424.63 | 283,345.09 | 511,787.19 | 305,272.64 | (3,012.54) | 1,203,825.21 |