Honorable Timothy W. Dore
Chapter 11
Hearing Date: March 29, 2024
Hearing Time: 9:30 am
Location: Court Room 8106
Response Due: March 22, 2024

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

In re

STRATEGIES 360, INC.,

              Debtor.

No. 23-12303

KEYBANK.'S MOTION FOR APPOINTMENT OF TRUSTEE

## I. RELIEF REQUESTED

KeyBank, N.A. ("KeyBank"), the sole secured creditor of Strategies 360, Inc. ("Debtor" or "S360"), moves for an order appointing a trustee to manage this Chapter 11 estate and the Debtor's reorganization efforts pursuant to 11 U.S.C. § 1104(a)(1) for cause based on the Debtor's dishonesty, incompetence, and gross mismanagement, both pre- and post-petition, and because such appointment is in the best interests of the Debtor's creditors pursuant to Section 1104(a)(2). Alternatively, should the Court deny such relief, KeyBank seeks the appointment of an examiner with special powers pursuant to 11 U.S.C. § 1104(c) to (1) investigate the Debtor's financial affairs and equity securities dealings (the "Equity Transactions") between and among the Debtor's owner and CEO, Ronald Dotzauer, and other existing and former employees and insiders of the Debtor, and (2) to provide independent management oversight and enforcement of this estate's rights and remedies under all provisions of Chapter 5 of the Bankruptcy Code, thereby ensuring any confirmed plan of reorganization advances the best interests of creditors by prioritizing their repayment ahead of claims subject to disallowance and/or mandatory subordination under Sections 502, 510(b), 548 or other provisions of the Bankruptcy Code. This Motion is supported by the

KEYBANK'S MOTION FOR APPOINTMENT
OF TRUSTEE - 1
#5539027 v2 / 73219-010

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Case 23-12303-TWD    Doc 242    Filed 03/08/24    Ent. 03/08/24 16:58:34    Pg. 1 of 12

Declaration of Dale Conder (Dkt. No. 196), the accompanying Declarations of Dale Conder and Bruce Leaverton, and by the papers and pleadings on file in this case, as well as in the related case of *In re Ronald Dotzauer*, Case No. 24-10052-TWD (the "Dotzauer Case").

## II. SUMMARY OF ARGUMENT

S360 is a consulting service business that heavily depends upon the continuing commitment of its commissioned employees to first generate and then service customers. The related accounts receivable and cash are the company's only material assets. The company's financial history demonstrates its profitability is heavily dependent upon competent management, focusing solely on the company's interests, rather than the personal interests of its founder, CEO and 95% shareholder, Ronald Dotzauer ("Dotzauer"). While perhaps still somewhat active himself as a consultant, he has recently been less focused on the company's future success and more focused on securing his hold on its ownership.

In the years preceding this filing, Dotzauer and his co-shareholder, Eric Sorenson ("Sorenson"), focused on selling their shares to a new owner – an effort they abandoned in late 2019. Thereafter, Dotzauer embroiled the company in litigation over governance issues arising from his efforts to force Sorenson out of the company. Ultimately, Dotzauer's mismanagement caused this bankruptcy filing by needlessly burdening S360's balance sheet with his own personal stock-related transactions – including a $6.0 million obligation to Sorenson and, more recently, a $2.0 million obligation to John Oceguera ("Oceguera") relating to sales transactions in the Debtor equity securities.

These and other acts of incompetency and mismanagement were followed, during the weeks preceding this Chapter 11, by S360's management's failure to retain Yong Lee as its CFO; Dotzauer's diversion of S360's cash (including recent KeyBank LOC advances) to another bank; and the peremptory filing of this Chapter 11, all without any prior notice to KeyBank, despite the bank's having continued to fund the line of credit post-default and its offer of continuing cooperation should a Chapter 11 be necessary.

KEYBANK'S MOTION FOR APPOINTMENT OF TRUSTEE - 2
#5539027 v2 / 73219-010

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Case 23-12303-TWD    Doc 242    Filed 03/08/24    Ent. 03/08/24 16:58:34    Pg. 2 of 12

S360's incompetence and mismanagement did not stop with its Chapter 11 filing and it has taken no steps to remedy them. S360 continues to sponsor an unconfirmable Amended Plan that ignores Section 510(b) and other provisions of the Bankruptcy Code that protect its creditors. Instead, the Amended Plan would obligate the reorganized company to pay over $8.0 million on claims subject to mandatory subordination, obligations Dotzauer personally owes these claimants, instead treating them on more favorable terms than KeyBank and other creditors. Moreover, S360's post-petition financial reporting was initially untimely and inaccurate, and its projections, including its Amended Plan's pro forma budget, are inaccurate, unreliable, and incomplete.

Finally, S360's incompetent management is responsible for its unauthorized payment of over $1,185,587 to its prepetition creditors—an act constituting the *res ipsa loquitur* equivalent of post-petition "gross mismanagement" under Section 1104(a)(1) of the Bankruptcy Code. In short, the Court's appointment of a trustee is mandated under Section 1104(a). A trustee is necessary to ensure the interests of creditors are advanced in accordance with applicable provisions of the Bankruptcy Code, including Section 510(b).[1]

### III. FACTS.

**A.** **Formation of S360.** S360 was organized under Washington law beginning in 1986 and provides political consulting and strategic communications services. *See* Leaverton Declaration, Ex. A (Dotzauer Complaint), ¶ 2. In 2003, Dotzauer and Sorenson agreed to merge their consulting businesses, and became 51% and 49% shareholders, respectively. According to Dotzauer, he gave Sorenson company shares with the understanding that "Sorenson would continue to hold that equity interest as long as he continued to work productively for the business." *Id.* at 3, ¶ 9.

On or about November 28, 2012, Dotzauer and Sorenson entered into a Shareholder Agreement, which provided in pertinent part that if either of them withdrew from the company, the remaining shareholder would have a right to purchase the withdrawing shareholder's shares.

---

[1] Under the terms of Dotzauer's personal guaranty, payment of his personal obligations by S360 ahead of KeyBank, which is the gist of the Amended Plan, is expressly subordinated, also triggering the application of Section 510(a).

KEYBANK'S MOTION FOR APPOINTMENT OF TRUSTEE - 3
#5539027 v2 / 73219-010

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Case 23-12303-TWD    Doc 242    Filed 03/08/24    Ent. 03/08/24 16:58:34    Pg. 3 of 12

*See* Leaverton Declaration, Ex. A (Dotzauer Complaint, Exhibit A attached thereto, at 2-6, Section 2). They further agreed the price to be paid for a withdrawing shareholder's shares would be based upon an appraised value, with specific provisions to govern the appraised value in the event of a dispute. *Id.* at Section 3.2.

According to Dotzauer, Sorenson's performance "fell below expectations over an extended period, and these issues reached a breaking point in August 2018." *Id.* at 4, ¶ 16. By this time, S360's business had grown considerably, with annual profits of $3.0 million. With this success came an interest in selling the business, and Sorenson agreed to a paid leave of absence. By Spring 2019, S360 was engaged in negotiations with Round Table Capital Management, L.P. ("RTC"). However, on October 14, 2019, RTC withdrew from these negotiations.

**B.    Ownership Disputes, Litigation and Stock Purchase and Sale Settlement.**

Dotzauer subsequently informed Sorenson he would purchase Sorenson's shares according to the terms of the Shareholder Agreement. On November 18, 2019, Sorenson and Dotzauer entered into a Letter Agreement to retain Clifton Larson Allen LLP ("CLA") to value Sorenson's shares. *Id.*, at 5, ¶ 21. However, Sorenson refused to accept the CLA valuation and also disputed the propriety of certain board amendments to the Shareholder Agreement as a breach of fiduciary duty and contract.

Ultimately, the parties entered into a Settlement Agreement, dated December 31, 2020 (the "Settlement Agreement"), which provided for Dotzauer to pay Sorenson $6.0 million for his stock. The parties further agreed Dotzauer would be permitted to pay this purchase price over a term of years pursuant to a promissory note (the "Stock Purchase Note"). *Id.* at Ex. D at 2, ¶ 4. Notwithstanding the fact that Dotzauer alone benefitted from this stock transaction, he nevertheless caused S360 to be a co-maker on the Stock Purchase Note, despite the company receiving no consideration. *See* Sorenson Proof of Claim 17-1.

Within three months of the execution of the Settlement Agreement, Dotzauer and S360 defaulted on the Stock Purchase Note. Discovery is ongoing but it appears the company alone made the few payments on this obligation. Ultimately, the parties then entered into a Forbearance

KEYBANK'S MOTION FOR APPOINTMENT OF TRUSTEE - 4
#5539027 v2 / 73219-010

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Case 23-12303-TWD    Doc 242    Filed 03/08/24    Ent. 03/08/24 16:58:34    Pg. 4 of 12

Agreement, dated as of June 7, 2022, which once again provided that both the Debtor and Dotzauer were "borrowers" under the Stock Purchase Note. Nevertheless, Dotzauer and S360 soon again defaulted. *See generally* Leaverton Decl., Ex. B.

Based on these continuing defaults, Sorenson then brought an action against Dotzauer and S360 in King County Superior Court the on July 23, 2023 (the "Sorenson Lawsuit"). *Id.* Ultimately, the Sorenson Lawsuit resulted in entry of a judgment against Dotzauer and S360, dated October 19, 2023 (the "Sorenson Judgment"). *Id.*, Ex. E.

**C.    The Oceguera/Dotzauer S360 Stock Transaction.** In late 2023, Dotzauer negotiated and apparently acquired the public relations/communications business of Oceguera. *See* Leaverton Decl., Ex. F. Under a Stock Purchase Agreement, dated August 25, 2023, Dotzauer agreed to sell Oceguera shares comprising a 5% ownership stake in S360 for a $2.0 million. *Id.* The details of this transaction are still under investigation by KeyBank, but it appears Oceguera sourced the stock purchase money as a loan (the "Oceguera Loan") from a family trust (the "Canepa-Rotoli Trust"). Dotzauer personally guaranteed this loan. *Id.* at Ex. G. Under a contemporaneous Repayment Agreement, Dotzauer also agreed he would cause S360 to form an ESOP by year end of 2024 that would pay him $2.0 million. *Id.* at Ex. J. Those funds would then be paid to the Canepa-Rotoli Trust in satisfaction of the Oceguera Loan.

None of the documentation relating to this transaction obligates S360 to repay the Oceguera Loan (though it is a party to the Stock Purchase Agreement and Section 5.4 states S360 shall form an ESOP no later than December 31, 2024). It remains unclear whether Dotzauer, S360, or some other party or parties were the ultimate beneficiaries of the $2.0 million payment of the stock purchase price. Further, there is no reference to his $2.0 million Oceguera Loan guaranty in Dotzauer's bankruptcy schedules.

**D.    Potentially Avoidable Transfers to Dotzauer.** S360's Schedules and Statement of Financial Affairs reflect that over and above the handsome executive compensation paid

KEYBANK'S MOTION FOR APPOINTMENT
OF TRUSTEE - 5
#5539027 v2 / 73219-010

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Case 23-12303-TWD    Doc 242    Filed 03/08/24    Ent. 03/08/24 16:58:34    Pg. 5 of 12

Dotzauer as CEO (some $950,000 annually)[2], S360 has also paid his personal expenses relating to automobiles and a luxury boat. *See* Dkt. 1 at 92 (S360's response to SOFA Question 30.1). S360's Amended Plan does not contain any provisions limiting, prohibiting, preserving, or recovering such expenditures as Chapter 5 avoidance claims. Although the Amended Plan steps down Dotzauer's annual compensation from $950,000 to $650,000, such lavish compensation should be substantially reduced to a base salary and commission. The savings from such an adjustment should more than offset the expense of a trustee with the financial acumen to provide much needed financial oversight.

**E.     The KeyBank Secured Line of Credit.**  KeyBank is S360's secured line of credit lender, owed $3,665,639.30 in principal, plus accrued and accruing contract and default rate interest, attorneys' fees, and costs (the "KeyBank Secured Claim") under a fully matured line of credit loan facility (the "KeyBank LOC"). *See* Declaration of John Rosenberg. Dkt. 6. Although KeyBank had provided a line of credit to the Debtor since November 2021, it renewed the line of credit on July 26, 2023, with only a 90-day maturity date of November 1, 2023. Although KeyBank was then aware that S360 had an obligation on its balance sheet relating to the Sorenson Stock Purchase Note, it was at no time advised by S360 or Dotzauer of their defaults, litigation, and controversies with Sorenson until the latter's litigation counsel notified KeyBank of entry of the Sorenson Judgment in October 2023.

Given the Sorenson Judgment and the Debtor's dwindling cash resources, in a cooperative gesture, KeyBank encouraged S360 to draw down funds on its line of credit before its termination at maturity, to sustain operations and the collectability of accounts receivable. Conder Decl., ¶ 4. S360 heeded this warning, drawing down $740,000 on the maturity date. KeyBank also invited S360 to work cooperatively on any cash collateral budgets necessary for a bankruptcy proceeding. S360 never responded to these requests. *Id.*

---

[2] *See* Schedule I. The Debtor's response to SOFA Question 4 lists gross wages and a bonus for 2023 as $1,049,116.59, and for 2022, $840,000. *See* Dkt. No. 39 (SOFA).

KEYBANK'S MOTION FOR APPOINTMENT
OF TRUSTEE - 6
#5539027 v2 / 73219-010

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Case 23-12303-TWD    Doc 242    Filed 03/08/24    Ent. 03/08/24 16:58:34    Pg. 6 of 12

Instead, the Debtor surreptitiously moved its depository account from KeyBank to another bank prior to its surprise bankruptcy filing. Conder Decl., ¶ 4. A few weeks prior to S360's filing for Chapter 11 relief, its CFO, Yong Lee, resigned from his position. *Id.*, ¶ 2. S360 filled this vacancy internally by promoting John Rosenberg from its staff.

F. **Post-Bankruptcy Debtor Mismanagement.** Under the supervision of John Rosenberg, S360's new chief financial officer, and the legal direction of its bankruptcy counsel, S360's proposed Cash Collateral projections proved to be unreliable and misleading. Moreover, as is more particularly described in the Conder Declarations, S360 has paid over $1.0 million to prepetition creditors without authorization by the Court. Moreover, on several occasions KeyBank has demanded that S360 revise its Amended Plan to preserve Chapter 5 claims and subordinate the personal obligations owed by Dotzauer to Sorenson and Oceguera in compliance with Section 510(b). *See* Leaverton Decl., Ex. K. KeyBank has also demanded that S360 bring an adversary proceeding[3] to effectuate such mandatory abstention or disallowance. S360 has rejected these requests. *See id.*, Ex. L.

### IV.    ISSUES PRESENTED

1. Does cause exist for the appointment of a trustee to manage the estate and S360's reorganization effort in this case based upon Section 1104(a)(1), and if not, is such appointment in the best interests of the creditors under Section 1104(a)(2)?

2. If the Court does not order the appointment of a trustee, is the appointment of an examiner required under Section 1104(c), and should such examiner be given special powers to protect the interests of the creditors in this case?

### V.    ARGUMENT

A. **Cause Exists for the Appointment of a Trustee.**

The Court should appoint a Chapter 11 trustee to manage the estate and the Debtor's reorganization effort in this case. Under the Bankruptcy Code, a party in interest may move for the

---

[3] Bankruptcy Rule 7001(8) mandates an adversary proceeding is required to subordinate any allowed claim or interest is required unless the chapter 11 plan itself provides for subordination.

KEYBANK'S MOTION FOR APPOINTMENT
OF TRUSTEE - 7
#5539027 v2 / 73219-010

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Case 23-12303-TWD    Doc 242    Filed 03/08/24    Ent. 03/08/24 16:58:34    Pg. 7 of 12

appointment of a trustee to replace the debtor-in-possession "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management." 11 U.S.C. § 1104(a)(1). The examples of "cause" enumerated in § 1104(a)(1) are not exhaustive. *See In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 472 (3d Cir. 1998). Misuse of assets and funds by a debtor-in-possession supports a finding of cause to support the appointment of a trustee under § 1104(a)(1); *see also In re Vascular Access Ctrs., L.P.*, 611 B.R. 742, 764 (Bankr. E.D. Penn. 2020); 7 *Collier on Bankruptcy* § 1104.02(3)(c)(i). Moreover, the appointment of a trustee is appropriate where a debtor has diverted funds. *See In re PRS Ins. Group, Inc.*, 274 B.R. 381 (Bankr. D. Del. 2001).

Unauthorized post-petition transfers of estate assets, such as the expenditure of cash collateral without court approval, are cause for the appointment of a trustee under Section 1104(a)(1). *See In re V. Savino Oil & Heating Co.*, 99 B.R. 518, 527 (Bankr. E.D.N.Y. 1989); *In re McCorhill Pub., Inc.*, 73 B.R. 1013 (Bankr. S.D.N.Y. 1987); *In re Ford*, 36 B.R. 501, 504 (Bankr. W.D. Ky. 1983); *Crescive Landscape Mgmt. v. PHDC, LLC* (*In re PHDC, LLC*), Case No. 03-93397, 2004 Bankr. LEXIS 1113 (Bankr. N.D. Ga. 2004) (appointing a trustee where, among other things, the debtor had expended cash collateral without court approval). Where cause exists, appointment of a chapter 11 trustee is mandatory. *See Marvel*, 140 F.3d at 472 (3d Cir. 1998) (citing *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989)).

The listing of factors constituting cause under Section 1104(a)(1) is not exhaustive nor exclusive. Courts have found conflicts of interest on the part of the management of a debtor may justify the appointment of a trustee, particularly where the person managing the debtor in possession does so to advance personal interests over those of creditors. *See e.g.*, *Marvel*, *supra*, 140 F.3d at 472*; In re Funge Systems, Inc.*, 2002 Bankr. LEXIS 1937 (Bankr. Va. 2002). As summarized in *In re Nartron Corp.*, 330 B.R. 573, 591 (Bankr. W.D. Mich. 2005):

> The inquiry into whether "cause" exists for such appointment is not limited to the enumerated list of fraud, dishonesty, incompetency, or gross mismanagement but extends to "similar cause." Factors on which the decision whether to appoint a trustee have turned include: Materiality of misconduct; Evenhandedness or lack

KEYBANK'S MOTION FOR APPOINTMENT OF TRUSTEE - 8
#5539027 v2 / 73219-010

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Case 23-12303-TWD    Doc 242    Filed 03/08/24    Ent. 03/08/24 16:58:34    Pg. 8 of 12

thereof in dealings with **_insiders_** and affiliated entities in relation to other creditors or customers; The existence of prepetition avoidable preferences or fraudulent transfers; Unwillingness or inability of management to pursue estate causes of action…Conflicts of interest on the part of management interfering with its ability to fulfill duties to the debtor; **_Self-dealing_** by management…(Emphasis in original).

Here, the record establishes Dotzauer's conflicts of interest and self-dealing arising from his transactions in S360's equity securities.

**B.    Appointment of a Trustee is in the Best Interests of Creditors.**

In addition to there being cause to appoint a trustee in this case under Section 1104(a)(1), even in the absence of such "cause" the Bankruptcy Code requires the appointment of a trustee "if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate." 11 U.S.C. § 1104(a)(2). In *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 167 (Bankr. S.D.N.Y. 1990), the Court identified the factors to be considered when evaluating whether appointment of a chapter 11 trustee is appropriate under the § 1104(a)(2):

(i)   the trustworthiness of the debtor;
(ii)  the debtor in possession's past and present performance and prospects for the debtor's rehabilitation;
(iii) the confidence – or lack thereof – of the business community and of creditors in present management; and
(iv)  the benefits derived by the appointment of a trustee, balanced against the cost of the appointment.

Moreover, under Section 1104(a)(2), courts have recognized that the debtor, as debtor-in-possession, "must act as a 'fiduciary of his creditors' to 'protect and preserve property in his possession for the benefit of creditors', and to 'refrain [] from acting in a manner which could damage the estate, or hinder a successful reorganization of the business.'" *See In re Ionosphere Clubs, Inc.*, 113 B.R. at 169 (quoting *In re Sharon Steel Corp.*, 86 B.R. 455, 457 (Bankr. W.D. Pa. 1988)). When a debtor-in-possession is unwilling or incapable of performing these duties, a Chapter 11 trustee may be appointed under Section 1104(2)(2). *See Ionosphere*, 113 B.R. at 169. Based on the foregoing facts, S360's existing management has proven itself both incapable and unwilling to act in this case as a fiduciary for its creditors.

Under Ninth Circuit BAP authority, the Sorenson claim is clearly subject to mandatory subordination. In *Kurtin v. Ehrenberg (In re Elieff)*, 637 B.R. 612 (B.A.P. 9th Cir. 2022), on almost

KEYBANK'S MOTION FOR APPOINTMENT OF TRUSTEE - 9
#5539027 v2 / 73219-010

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Case 23-12303-TWD    Doc 242    Filed 03/08/24    Ent. 03/08/24 16:58:34    Pg. 9 of 12

identical facts underlying the Sorenson claim, the Court found Section 510(b) to apply. In that case, after the relationship between two partners of a number of jointly held entities deteriorated, each partner filed suit against the other alleging the other partner's breach of various legal duties owed among partners. The parties then engaged in a mediation resulting in a settlement agreement that required Kurtin to transfer his equity securities interests in the jointly owned entities to Elieff. In turn, Elieff agreed to indemnify Kurtin for any liabilities arising from the joint entities. In exchange for both the dismissal of his causes of action and the "sale" of his interest in the joint entities, Kurtin was to receive from Elieff or the Joint Entities an aggregate of $48.8 million in "settlement payments." Elieff failed to make all the settlement payments. Kurtin filed a second lawsuit to enforce the settlement agreement resulting in a judgment of $33,892,117.62 in favor of Kurtin. Elieff then filed bankruptcy.

The bankruptcy court held that the judgment was subject to mandatory subordination under Section 510(b) based on the undisputed fact that the crux of the Settlement Agreement required Kurtin to transfer his interest in the Joint Entities to Elieff in exchange for settlement payments. The BAP affirmed based on the fact the settlement payments were the only significant consideration flowing to Kurtin on account of his divestment of his interests in the joint entities. Kurtin (as Sorenson has here) relied on *Khan v. Barton (In re Khan)*, 846 F.3d 1058 (9th Cir. 2017). The BAP distinguished *Khan*, noting that in *Khan* there was no connection between the debtors' conversion of Barton's stock and his earlier purchase of that stock. Unlike the conversion of the interests in *Khan*, Kurten's judgment was based on Elieff's breach of the settlement agreement, which provided for the purchase of the debtor's stock. As such, the settlement agreement formed the direct causal link to Kurtin's sale of his interests in the joint entities, thus requiring subordination under section 510(b) as interpreted by the Ninth Circuit BAP.

Like *Kurtin*, Sorenson and Dotzauer's Settlement Agreement also requires a sale and purchase of S360 stock, and also as in *Kurtin*, the claim at issue arises from the breach of this stock purchase payment (and the subsequent Forbearance Agreement that extended and modified the payment terms for the stock) that mandate the Sorenson claim's subordination. As further noted in

KEYBANK'S MOTION FOR APPOINTMENT
OF TRUSTEE - 10
#5539027 v2 / 73219-010

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Case 23-12303-TWD    Doc 242    Filed 03/08/24    Ent. 03/08/24 16:58:34    Pg. 10 of 12

*Kurtin*, the effect of Section 510(b) mandatory subordination, is that Sorenson must not receive any payment until Key Bank and other creditors are paid in full. *See Kurtin*, 637 B.R. 612 at 630 (subordinated party under Section 510(b) "is not entitled to payment from any source" until the senior creditors are paid in full (emphasis in original)); *see also* Collier on Bankruptcy ¶ 10.02[1],at 510-5 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2009) ("Subordination is a remedy in which the order of payment rather than the existence of the debt is in issue.").

### C. If a Trustee is Not Appointed, an Examiner with Special Powers Should Be Appointed.

First, because of the $6.0 million Sorenson judgment (notwithstanding its mandatory subordination under Section 510), S360 owes in excess of $5.0 million in "unsecured debts, other than debts for goods, services or taxes." The appointment of an examiner is therefore mandatory under Section 1104(c)(1). Moreover, under these facts, it is also in the best interests of creditors that an examiner be appointed pursuant to Section 1104 (c)(2).

Given the incompetence and self-dealing by S360's management, it is also appropriate that the Court remove duties and authority from S360 pursuant to Section 1106(b) and vest them with the examiner, including at a minimum: (1) oversight of financial matters (including the costs and propriety of funding and forming any ESOP plan for employees); (2) investigation and prosecution of any Chapter 5 enforcement actions in the best interest of creditors; (3) investigation of management and implementation of any measures necessary to improve management; and (4) oversight and authority for the negotiation of plan confirmation terms and issues and the immediate withdrawal of the Amended Plan and its revision to comport with Section 510(b) and other requirements of the Bankruptcy Code.

It is well-established that bankruptcy courts may bestow broad powers on a Chapter 11 examiner; indeed, the legislative history demonstrates that courts are authorized to give examiners additional duties as circumstances warrant. *See Williamson v. Roppollo*, 114 B.R. 127, 129 (W.D. La. 1990) (citing H.R. Rep. No. 595, 95th Cong. 1st Sess. 404 (1977); Rept. No. 989, 95th Cong. 2d Sess. 116 (1978), U.S. Code Cong. & Admin. News 1978, 5787); *Balser v. DOJ*, 327 F.3d 903, 906 (9th Cir. 2003) (bankruptcy court authorized the appointment of an examiner with expanded

KEYBANK'S MOTION FOR APPOINTMENT OF TRUSTEE - 11
#5539027 v2 / 73219-010

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Case 23-12303-TWD    Doc 242    Filed 03/08/24    Ent. 03/08/24 16:58:34    Pg. 11 of 12

powers.); *In re Boileau*, 736 F.2d 503, 506 (9th Cir. 1984) (an examiner with expanded powers by stipulation of the parties was permitted to waive the debtor's attorney client privilege; this was apparently done to avoid the consequences associated with being designated as the trustee).

## VI. CONCLUSION

Under Section 1104(a) of the Bankruptcy Code, and to advance the best interests of the creditors of this Debtor, the Court should appoint a Chapter 11 trustee to manage the estate and the Debtor's reorganization efforts. While there are many instances, pre and post-petition, of the Debtor's incompetence and gross mismanagement, one need look no further for the cause required under Section 1104(a) than the Debtor's unauthorized use of KeyBank's cash collateral to pay prepetition creditors. There simply is no acceptable excuse for such a blatant transgression of the fundamentals of governing federal bankruptcy law, even if the Court might accept the proffered explanation that this error was "accidental."

Even if the Court were to issue the Debtor a free pass for such mismanagement, the Debtor's sustained adherence to proposing and advancing its unlawful Amended Plan, contrary to the dictates of mandatory subordination under Section 510(b), is also sufficient cause for such appointment under either or both subparts of Section 1104. Alternatively, if the Court does not find that cause exists to appoint a trustee, or that such an appointment is not in the interests of creditors, KeyBank requests that the Court appoint an examiner with the special powers noted above.

DATED this 8th day of March 2024.

*/s/Bruce W. Leaverton*
Bruce W. Leaverton, WSBA #15329
701 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: 206-223-1313
Facsimile: 206-682-7100
Email: bleaverton@karrtuttle.com
*Attorneys for KeyBank, N.A.*

KEYBANK'S MOTION FOR APPOINTMENT OF TRUSTEE - 12
#5539027 v2 / 73219-010

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Case 23-12303-TWD    Doc 242    Filed 03/08/24    Ent. 03/08/24 16:58:34    Pg. 12 of 12