UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | No. 23-12303-TWD |
| STRATEGIES 360, INC., | DEBTOR'S SEVENTH AMENDED PLAN OF REORGANIZATION |
| Debtor. | |

Strategies 360, Inc. (the "Debtor"), debtor-in-possession in the above-captioned bankruptcy case, proposes the following Plan of Reorganization (the "Plan") pursuant to Subchapter II of Chapter 11 of the Bankruptcy Code:

## ARTICLE I.
## DISCLOSURE STATEMENT

The Debtor has filed a Disclosure Statement pursuant to 11 U.S.C. § 1125 and Bankruptcy Rule 3016(c). The Disclosure Statement has been approved by the Bankruptcy Court prior to this Plan being submitted to creditors. The Disclosure Statement provides useful information to aid and assist creditors in voting on the Plan.

## ARTICLE II.
## DEFINITION OF TERMS

### A.    Definitions

A term used in this Plan that is not defined below and that is defined in the Bankruptcy Code shall have the meaning ascribed in the Bankruptcy Code. When used in this Plan, the following terms shall have the meanings specified below, unless the context otherwise requires:

DEBTOR'S SEVENTH AMENDED PLAN OF
REORGANIZATION– Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1.    <u>Administrative Convenience Claim</u>: An Allowed Claim (i) less than or equal to $10,000 or (ii) as to which the Holder has opted into Class 4.

2.    <u>Administrative Expense Claim</u>: An Allowed Claim entitled to priority under § 507(a)(2) of the Bankruptcy Code, including (a) claims incurred by the Debtor since the Petition Date and allowed by the Court of a type described in § 503(b) of the Code; (b) all Allowed Claims of Professional Persons pursuant to §§ 330 and 331 of the Code and Bankruptcy Rule 2016; and (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

3.    <u>Affiliates</u>: Each entity owned directly or indirectly by the Debtor, including without limitation Strategy 360 Canada Holdings ULC, Strategies 360 Texas LLC, Strategies 360 M & A Holding Group, Inc., Political Group LLC and Western Consultants, LLC.

4.    <u>Allowed Claim</u>: Any Claim in the amount and of the priority classification set forth in the proof of such Claim that has been filed timely in the Bankruptcy Case, or in the absence of such proof, as set forth in the Debtor's Schedules of liabilities filed in the Bankruptcy Case, unless:

(i) such Claim has been listed in such Schedules as disputed, contingent, or unliquidated, in which case such Claim shall be allowed only in such amount and such classification as is authorized by Final Order of the Bankruptcy Court;

(ii) such Claim has been objected to or is objected to after Confirmation, in which case such claim is authorized by Final Order of the Bankruptcy Court; or,

(iii) such Claim has been paid in full, withdrawn, or otherwise deemed satisfied in full.

5.    <u>Allowed Oceguera Claim</u>: Shall have the meaning identified in Section IV.B.5 of this Plan.

6.    <u>Allowed Sorenson Claim</u>: The Allowed Sorenson Claim shall be allowed in the amount of $6,492,040.45, which equals the amount contained in Sorenson's filed proof of claim with interest through May 10, 2024 at the federal judgment rate in effect as of May 5, 2024, and shall bear interest at the Federal Judgment Rate from the Effective Date.

7.    <u>Amended Governance Documents</u>: Pursuant to 11 U.S.C. §1123, RCW 23B.02.020 and RCW 23B.10.080, the governance documents of Debtor and Affiliates shall be amended in the Plan Supplemental Documents, as required or contemplated by the Plan and as directed by the order of confirmation or any other related orders of the Court in the Bankruptcy Case. So long as any class of Allowed Claims against the Debtor remains unsatisfied, such Amended Governance Documents shall remain in effect and shall not be further altered or modified contrary to any terms of the Plan or court orders.

8.    <u>Assumed Contract</u>: Shall have the meaning identified in Section VI of this Plan.

DEBTOR'S SEVENTH AMENDED PLAN OF
REORGANIZATION– Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Case 23-12303-TWD   Doc 335   Filed 05/10/24   Ent. 05/10/24 13:19:28   Pg. 2 of 33

9. _Authorized ESOP Professional Fees_:  Shall have the meaning identified in Section VIII.F of this Plan.

10. _Ballot_:  The form for acceptance or rejection of the Plan distributed to those Creditors entitled to vote on the Plan.

11. _Bankruptcy Case_:  The chapter 11 case of the Debtor pending before the Bankruptcy Court under Case No. 23-12303-TWD.

12. _Bankruptcy Code or Code_:  The Bankruptcy Code enacted November 6, 1978, as set forth in Title 11 of the United States Code, and as amended thereafter.

13. _Bankruptcy Court or Court_:  The United States Bankruptcy Court for the Western District of Washington, before which the Bankruptcy Case is pending, or if that Court ceases to exercise jurisdiction over the Bankruptcy Case, the Court that does exercise jurisdiction.

14. _Bankruptcy Rules_:  The Federal Rules of Bankruptcy Procedure.

15. _Bi-Annual Surplus Cash_:  Shall have the meaning assigned in Article VIII.A of the Plan.

16. _Board_: Shall have the meaning identified in Section VII.B.3.

17. _Board Reconstitution_:  The provisions in the Amended Governance Documents providing for the expansion of the Debtor's Board on the Effective Date to include five directors, including the Independent Director, with duties including those identified in Section VII.B.3 of the Plan.

18. _Business Day_:  Any day except Saturday, Sunday or a "legal holiday" as defined in Bankruptcy Rule 9006(a)(6).

19. _CRO_:  Shall have the meaning identified in Section VII.B.5 of the Plan.

20. _Cash_:  Cash or cash equivalents including, but not limited to, bank deposits, wire transfers, checks, and other similar items.

21. _Cash Collateral Order_:  The Second Interim Order (1) Authorizing Use of Cash Collateral on an Interim Basis and (2) Granting Adequate Protection entered by the Court on February 14, 2024.

22. _Claim_:  A claim as defined in § 101(5) of the Bankruptcy Code.

23. _Claims Bar Date_: January 26, 2024.

24. _Class_:  A class of Claims or Interests as defined in Article III of this Plan.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

25. <u>Class 1 Claim</u>:  Shall have the meaning identified in Section IV.B.1 of this Plan.

26. <u>Class 1 Initial Plan Payment</u>:  Shall have the meaning identified in Section IV.B.1.c of this Plan.

27. <u>Class 1 Security Interest</u>: Shall have the meaning identified in Section IV.B.1.b of this Plan.

28. <u>Class 2 Claim</u>:  Shall have the meaning identified in Section IV.B.2 of this Plan.

29. <u>Class 3 Claim</u>:  Shall have the meaning identified in Section IV.B.3 of this Plan.

30. <u>Class 3 Bi-Annual Surplus Cash Distribution</u>:  Shall have the meaning identified in Section VIII.A.

31. <u>Class 4 Claim</u>:  Shall have the meaning identified in Section IV.B.4 of this Plan.

32. <u>Class 4 Opt-In</u>:  Shall have the meaning identified in Section IV.B.3.d of this Plan.

33. <u>Class 5 Claim</u>:  Shall have the meaning identified in Section IV.B.5 of this Plan.

34. <u>Class 5 Bi-Annual Surplus Cash Distribution</u>:  Shall have the meaning identified in Section VIII.A of the Plan.

35. <u>Class 6 Claim</u>:  Shall have the meaning identified in Section IV.B.6 of this Plan.

36. <u>Class 6 Bi-Annual Surplus Cash Distribution</u>:  Shall have the meaning identified in Section VIII.A of the Plan.

37. <u>Committee</u>:  The Official Unsecured Creditors Committee.

38. <u>Confirmation</u>:  Confirmation of the Debtor's Plan.

39. <u>Creditor</u>:  A "creditor" within the meaning of § 101(10) of the Bankruptcy Code.

40. <u>Curable Plan Default</u>:  Shall have the meaning identified in Section VIII.I of this Plan.

41. <u>Debtor</u>:  Strategies 360, Inc. the debtor in possession in this Bankruptcy Case.

42. <u>Debtor ESOP</u>:  Shall have the meaning identified in Section VII.B.7 of this Plan.

43. <u>Default Notice</u>:  Shall have the meaning identified in Section VIII.I of this Plan.

DEBTOR'S SEVENTH AMENDED PLAN OF
REORGANIZATION– Page 4

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Case 23-12303-TWD    Doc 335    Filed 05/10/24    Ent. 05/10/24 13:19:28    Pg. 4 of 33

44. <u>Disputed Claim</u>: A filed or scheduled Claim of an alleged creditor that was listed in a Debtor's Schedules as "disputed," and which has not subsequently been allowed, or as to which a party-in-interest has filed an objection.

45. <u>Dotzauer</u>: Ron Dotzauer.

46. <u>Dotzauer Bankruptcy Case</u>: Bankruptcy Case No. 24-10052 (W.D. Wash).

47. <u>Eligible Accounts Receivable</u>:
All present and future acquired accounts receivable owed to the Debtor (and to any of its Affiliates who are borrowers or guarantors of the KeyBank Allowed Secured Claim pursuant to the Plan and who have granted as of the Effective Date valid and perfected security interests in their Cash and accounts receivable in favor of KeyBank under the Plan Supplemental Documents) that are not more than 90 days past due and as to which (a) the account debtor has not notified the Debtor that it is claiming any defense to payment of the account, whether well-founded or otherwise, or subject to any counterclaim, credit, allowance, adjustment, deduction or offset and (b) the account debtor maintains its chief executive office in the United States of America. For the avoidance of doubt, while "Eligible Account Receivable" does not include any account receivables held now or in the future by the Debtor's Affiliate, Strategy 360 Canada Holdings ULC, Strategy 360 Canada Holdings ULC shall not pledge or otherwise encumbers its receivables until the Class 1 Claim is paid in full and the KeyBank Loan Documents shall include such negative pledge.

48. <u>Effective Date</u>: The earlier of (a) two Business Days after the date of an entry of an order in the Dotzauer Bankruptcy case approving the actions to be taken by Dotzauer in implementing the Plan, or (b) June 3, 2024.

49. <u>Excess Nevada NOI</u>. The annual net operating income of the Debtor's Nevada operations in excess of $750,000.

50. <u>Executive Compensation</u>: Shall have the meaning identified in Section VII.B.3.a.

51. <u>Executive Compensation Limit</u>: Shall have the meaning identified in Section VII.G of this Plan.

52. <u>ESOP Trust</u>: Shall have the meaning identified in Section VII.B.7 of this Plan.

53. <u>Estate</u>: The Estate created for the Debtor pursuant to § 541 of the Bankruptcy Code.

54. <u>Federal Judgment Rate</u>: The rate of interest in effect as of the Effective Date provided for under 28 U.S.C. § 1961 for post-judgment interest in federal court proceedings.

55. <u>Final Order</u>: An order or judgment of the Court as to which the time for appeal has expired without a notice of appeal having been filed or as to which any appeal therefrom has been resolved.

DEBTOR'S SEVENTH AMENDED PLAN OF REORGANIZATION– Page 5

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Case 23-12303-TWD    Doc 335    Filed 05/10/24    Ent. 05/10/24 13:19:28    Pg. 5 of 33

56. <u>Final Trujillo Resolution</u>: Shall have the meaning identified in Section IV.B.2 of this Plan.

57. <u>Governmental Unit</u>: A "governmental unit" as defined in § 101(27) of the Bankruptcy Code.

58. <u>Holder</u>: A holder of a Claim or Equity Interest, as the case may be.

59. <u>Independent Director</u>: Shall have the meaning identified in Section VII.B.2 of this Plan and the Amended Governance Documents. Subject to his willingness to serve, the Independent Director shall be Alan Chaffee no later than the Effective Date of the Plan.

60. <u>Interest</u>: An equity interest in the Debtor.

61. <u>KeyBank</u>: KeyBank National Association.

62. <u>KeyBank Allowed Secured Claim</u>: The Class 1 allowed secured claim of KeyBank as described in Section IV.B.1.a.

63. <u>KeyBank Collateral</u>: All existing and future acquired assets of the Debtor and its Affiliates, including without limitation all of their Cash, accounts receivable, equipment, inventory, general intangibles, depository accounts, equity securities, Plan Reserved Claims, premises leases and other existing and future acquired collateral, all as further described in the Cash Collateral Order, the Commercial Security Agreement dated November 4, 2021 and the other KeyBank Loan Documents entered into by the Debtor or its Affiliates as part of the Plan Supplemental Documents executed by the Debtor and such Affiliates.

64. <u>KeyBank Loan</u>: The loan from KeyBank to the Debtor and Affiliates evidenced by, among other things, the KeyBank Loan Documents.

65. <u>KeyBank Loan Documents</u>: Shall mean the KeyBank Loan Agreement, the KeyBank Note, the KeyBank Security Agreement, as amended by the Plan, and any documents executed by Affiliates of the Debtor pursuant to the terms of the Plan and as part of the Plan Supplemental Documents, including without limitation a guaranty and security agreement signed by Western Consultants LLC and granting KeyBank a security interest in its Cash, accounts receivable and other assets.

66. <u>KeyBank Loan Agreement</u>: The Business Loan Agreement between the Debtor and KeyBank dated March 27, 2023, as supplemented by the Plan Supplemental Documents effectuating terms as set forth in this Plan.

67. <u>KeyBank Allowed Secured Claim Maturity Date</u>: Shall have the meaning identified in Section IV.B.1.d of this Plan.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

68. <u>KeyBank Plan Default Interest Rate</u>: The KeyBank Plan Interest Rate plus an additional 3% per annum.

69. <u>KeyBank Plan Interest Rate</u>: 8.38% per annum.

70. <u>KeyBank Note</u>: The Promissory Note executed by the Debtor in favor of KeyBank in the principal amount of $5,000,000 dated November 5, 2021.

71. <u>KeyBank Security Documents</u>: Collectively the Commercial Security Agreement executed by the Debtor in favor of KeyBank dated November 5, 2021 and all supplemental security agreements, leasehold assignments, stock pledges, financing statements, deposit account control agreements and other documentation as part of the Plan Supplemental Documents and granting, evidencing and perfecting KeyBank's security interests in the KeyBank Collateral.

72. <u>KeyBank Security Interests</u>: The security interests granted by the Debtor and Affiliates to KeyBank under the KeyBank Loan Documents.

73. <u>Loan-to-Value Covenant</u>: That financial negative covenant contained in the Plan and in the KeyBank Loan Documents requiring that the unpaid balance of the KeyBank Allowed Secured Claim shall not at any time exceed the amount calculated by multiplying the total of Cash plus Eligible Accounts Receivable by 80%.

74. <u>Notice and Hearing</u>: Proceedings as contemplated under Bankruptcy Code § 102(1).

75. <u>Oceguera</u>: John Oceguera, holder of a 5% Interest in the Debtor.

76. <u>Oceguera Claim</u>: The proof of claim filed with the Court by Oceguera on December 19, 2023, Proof of Claim No. 2, as modified by this Plan and the Oceguera Employment Agreement.

77. <u>Oceguera Employment Agreement</u>: The Employment Contract entered into between Oceguera and the Debtor and executed by the parties on September 8, 2023 and September 11, 2023, respectively, and as further modified by this Plan.

78. <u>Oceguera Committed Retention Date</u>: Shall have the meaning identified in Section IV.B.5.h of this Plan.

79. <u>Oceguera Stock Agreement</u>: The Stock Purchase Agreement entered into among Dotzauer, Oceguera and the Debtor as of August 25, 2023, as modified by this Plan.

80. <u>Official Mailing List</u>: Shall have the meaning identified in Section VIII.B.

81. <u>Order of Confirmation</u>: The order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

82. <u>Petition Date</u>:  November 27, 2023.

83. <u>Plan</u>:  The Debtor's confirmed plan of reorganization.

84. <u>Plan Default</u>:  Shall have the meaning identified in Section VIII.I of this Plan.

85. <u>Plan Oversight Duties</u>:  Shall have the meaning identified in Section VII.B.2.c of this Plan.

86. <u>Plan Reserved Claims</u>:  Shall have the meaning identified in Section VII.F of this Plan.

87. <u>Plan Supplemental Documents</u>.  The documents, instruments and agreements necessary to implement the Plan, including without limitation the Amended Governance Documents, the KeyBank Loan Documents and the Surplus Cash Calculation as described in Section VIII.A.

88. <u>Post-Confirmation Financial Report</u>:  Shall have the meaning identified in Section VII.H of this Plan.

89. <u>Priority Tax Claims</u>:  Allowed Claims of Governmental Units for the principal amount of a tax within the meaning of § 507(a)(8) of the Code, and statutory interest accruing thereon prior to the Petition Date.

90. <u>Professional</u>:  A person, including a trustee (if one is appointed), retained or to be compensated pursuant to §§ 326, 327, 328, 330, and/or 1103 of the Bankruptcy Code.

91. <u>Rejected Contract</u>:  Shall have the meaning identified in Article VI of this Plan.

92. <u>Reorganized Debtor</u>:  The Debtor on and following the Effective Date.

93. <u>Required Cash Balance</u>:  $3,000,000.00 in available funds of the Debtor on deposit in a KeyBank depository account owned by the Debtor, reduced by the amount of any outstanding and pending drafts and disbursements.

94. <u>Restricted Shares</u>:  Shall have the meaning identified in Section VII.B.7.a of this Plan.

95. <u>Secured Claim</u>:  An Allowed Claim that is a secured Claim against the Debtor determined in accordance with § 506(a) of the Bankruptcy Code.

96. <u>Schedules</u>:  The schedules of assets, liabilities and executory contracts and the statement of financial affairs filed on behalf of the Debtor pursuant to § 521 of the Bankruptcy Code, and in accordance with the Bankruptcy Rules, as each has been, or may be, amended and supplemented from time to time.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

97.     Sorenson Judgment:  The judgment in favor of Eric Sorenson entered on October 19, 2023 by the King County Superior Court Case No. 23-2-14006-1 SEA in the principal amount of $6,163,768.90.

98.     Trujillo Pro Rata Bi-Annual Surplus Cash Distribution:  The distribution required to be made to the Trujillos by the fifth of the month following any period in which (a) there is Bi-Annual Surplus Cash Payment and (b) the Trujillos were entitled to be paid Trujillo Monthly Payments, which distribution shall be calculated by dividing the Trujillo's Allowed Claim by the sum of the Trujillo's Allowed Claim and the total of allowed Class 3 Claims and multiplying such amount by the amount of Bi-Annual Surplus Cash Payment to which Class 3 is entitled to receive.

99.     Trujillo Claims:  The claims asserted against the Debtor by the Trujillos in Cause No. D-101-CV-2023-02290 pending before the State of New Mexico County of Santa Fe First Judicial District Court.

100.     Trujillo Monthly Payment:  Shall have the meaning identified in Section IV.B.2 of this Plan.

101.     Trujillos:  Jennifer and Anthony Trujillos, a married couple.

102.     Unsecured Claim:  An Allowed Claim that is (a) based upon (i) a proof of claim executed and filed in accordance with Bankruptcy Rule 3003(c) prior to the Claims Bar Date, or (ii) the listing of the Claim in the Debtor's schedules of liabilities as other than disputed, contingent or unliquidated, and (b) not a Secured Claim or an Unclassified Claim.

103.     Workforce Reduction:  The departure of any commission employee or the notification to the Debtor of any such employee's intent to resign or take a leave of absence from his or her full time employment by the Debtor.

**B.     Rules of Interpretation**

The rules of construction set forth in § 102 of the Bankruptcy Code shall apply to the Plan.

**ARTICLE III.**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

All Claims, as defined in § 101(5) of the Bankruptcy Code, against the Debtor are classified as set forth herein. A Claim is in a particular Class only to the extent it qualifies within the definition of such Class and is in a different Class to the extent it qualifies within the definition of such different Class.

Class 1:  Allowed Secured Claim of KeyBank
Class 2:  Trujillo Claim
Class 3:  Allowed General Unsecured Claims
Class 4:  Allowed Administrative Convenience Claims

DEBTOR'S SEVENTH AMENDED PLAN OF
REORGANIZATION– Page 9

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Class 5: Oceguera Claim
Class 6: Allowed Sorenson Claim
Class 7: Allowed Interests

**ARTICLE IV.**
**PROVISIONS FOR SATISFYING CLAIMS AND SPECIFYING**
**TREATMENT OF EACH CLASS UNDER THE PLAN**

There are six Classes of Claims and one Class of Interests, and certain other Claims are unclassified Claims pursuant to applicable provisions of the Bankruptcy Code. If the Court confirms the Plan and the Plan becomes effective, the Class into which each Allowed Claim and Allowed Interest fits will determine the manner in which such Claim or interest will be treated. The treatment of all Allowed Claims and Allowed Interests shall be as follows:

**A.** **Unclassified Claims**

1. Unclassified Claims.

   a. Administrative Expense Claims. As defined herein, Administrative Expense Claims are Allowed Claims for costs or expenses of the Chapter 11 Case that are allowed under sections 503(b) and 507(a)(2) of the Bankruptcy Code. Claims incurred in the ordinary course of the Debtor's business following the Petition Date shall be paid in the ordinary course of business in accordance with the terms and conditions of the particular agreements governing such obligations. Unless otherwise agreed to by the Professional Person, Claims of Professionals shall be paid on the later of the Effective Date or the date each such Claim becomes an Allowed Claim. Unless the Holder of such Claim agrees to alternative treatment, all Allowed Administrative Expense Claims that have been incurred by the Debtor prior to Confirmation shall be paid on or before the Effective Date of the Plan, provided that such payment does not cause or threaten to cause a violation of the Loan-to-Value Covenant as of the Effective Date.

   b. Priority Tax Claims. As defined herein, Priority Tax Claims are Allowed Claims of Governmental Units that are entitled to priority in accordance with section 507(a)(8) of the Bankruptcy Code. Priority Tax Claims include the principal portion of the applicable tax and interest accrued thereon through the Effective Date but do not include any penalties. The Debtor does not believe there are any Priority Tax Claims eligible for treatment under the Plan. The Debtor will pay any Allowed Priority Tax Claim on the earlier of (i) the Effective Date and/or (ii) the date upon which such claim is allowed.

**B.** **Classified Claims and Interests**

1. **Class 1: Allowed Secured Claim of KeyBank**

**Impaired.** Class 1 consists of the Allowed Secured Claim of KeyBank (the "Class 1 Claim"). The Class 1 Claim shall be paid as follows:

DEBTOR'S SEVENTH AMENDED PLAN OF
REORGANIZATION– Page 10

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Case 23-12303-TWD    Doc 335    Filed 05/10/24    Ent. 05/10/24 13:19:28    Pg. 10 of 33

a.  <u>Allowance of Claim</u>. The Class 1 Claim shall be allowed in the principal amount of $3,665,639.30 plus the following capitalized amounts which shall not include pre-Effective Date accrued default interest and late fees, which shall be waived: (i) accrued prepetition contract interest of $35,563.30; (ii) all additional accrued prepetition contract rate interest; (iii) all additional pre-Effective Date attorneys' fees and costs (as of March 30, 2024, approximately $250,000.00); (iv) all additional pre-Effective Date financial expert fees (approximately $30,000.00 as of May 10, 2024); and (v) such additional contract rate interest, attorneys' fees, financial expert fees and other costs accrued or incurred by KeyBank as of the Effective Date.

b.  <u>First Position Security Interest</u>. The Holder of the Class 1 Claim shall hold a valid and perfected first position security interest in the KeyBank Collateral to secure the Class 1 Claim until the Class 1 Claim has been paid in full (the "<u>Class 1 Security Interest</u>"). Upon Confirmation, the Plan shall be sufficient for, and conclusive evidence of, the priority, perfection, and validity of the Class 1 Security Interest and KeyBank shall not be required to file or serve mortgages, UCC financing statements, notices of lien or similar instruments, or take any other action in order to preserve the priority, perfection, and validity of the Class 1 Security Interest in the Debtor's and its Affiliates' assets. Notwithstanding the foregoing, the Debtor and Affiliates shall take such actions as reasonably requested by KeyBank to ensure the effectiveness of its security interests in all existing and future assets of the Debtor and its Affiliates.

c.  <u>Class 1 Initial Plan Payment</u>. The Debtor will pay KeyBank $250,000 plus all accrued post-petition non-default rate interest on the Effective Date, which amounts shall be applied to the principal amount of the KeyBank Allowed Secured Claim and outstanding accrued non-default interest as of the Effective Date (the "<u>Class 1 Initial Plan Payment</u>").

d.  <u>Monthly Payments</u>. Commencing the first day of the month that is at least 15 days following the Effective Date, the Debtor shall make monthly payments of $170,000 on the KeyBank Allowed Secured Claim, which payments will be applied first to accrued interest and then to principal. The KeyBank Allowed Secured Claim shall be paid in full by no later than the last day of the 26th month following the Effective Date (the "<u>KeyBank Allowed Secured Claim Maturity Date</u>"). Without KeyBank's consent, other than payments to the convenience Class 4 creditors and any authorized distributions of Bi-Annual Surplus Cash as provided in Section VIII.A of the Plan, Cash distributions under the Plan to Classes 2-6 shall be no greater than as provided under this Plan.

e.  <u>Bi-Annual Surplus Cash Distribution</u>. The Debtor shall pay 40% of the Bi-Annual Surplus Cash, if any, to the Holder of the Class 1 Claim until such time as the Class 1 Claim has been paid in full. Such payments shall be made on or before 30 days following the period in which the Independent Director determines there to be Bi-Annual Surplus Cash. Notwithstanding the foregoing, if any payment of Bi-Annual Surplus Cash would result in an overpayment of the Class 1 Claim, the amount of such overpayment shall be retained by the Debtor.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

f.    <u>Interest</u>. The Class 1 Claim shall accrue interest at the KeyBank Plan Interest Rate. In the event of a Plan Default, the Class 1 Claim shall thereafter accrue interest at the KeyBank Default Interest Rate.

g.    <u>Required Debt Coverage</u>. The unpaid balance of the KeyBank Allowed Secured Claim shall at no time exceed the amount calculated by multiplying the total of Cash plus Eligible Accounts Receivable by 80%. The Debtor shall make no payment or distribution to any of the holders of Allowed Administrative Expense Claims or any other Allowed Claims in any other classes under this Plan to the extent that any such payment or distribution should cause a default under the Loan-to-Value Covenant or any other Plan Default. If any Plan payments to a junior class of creditors would result in a violation of the Loan-to-Value Covenant, payment of such payment will be deferred as provided for in Section VIII.I(1). Any payments or distributions to Holders of Claims in Classes 2-6 made in violation of the Loan-to-Value Covenant or otherwise causing a Plan Default shall remain subject to the KeyBank Security Interest as a Debtor or Affiliate account receivable and shall be recoverable as a claim for recovery (the "<u>LTV Claims</u>") from each recipient by the Independent Director or CRO as the case may be, provided that a written demand for recovery of an LTV Claim must be made within 30 days of the date of the payment.

h.    <u>KeyBank Loan Documents</u>. The Plan incorporates by this reference all affirmative and negative covenants contained in the KeyBank Loan Documents, including without limitation those provided in the Plan Supplemental Documents. The Plan and Plan Supplemental Documents shall constitute amendments to the KeyBank Loan Documents and the Plan shall govern if there are inconsistencies between the KeyBank Loan Documents and the Plan terms. For the avoidance of doubt, the ESOP Restricted Stock Acquisition Loan described in Section VII.B.7 shall be carved out of any otherwise applicable negative loan covenants.

i.    <u>Plan Reserved Claims</u>. In the event of enforcement of a Plan Reserved Claim, KeyBank shall be entitled to the proceeds of any such claims. Following payment in full of the Class 1 Claim, such proceeds may then be distributed to other Classes in accordance with the Plan.

j.    <u>Reporting</u>. The Debtor shall continue to provide to KeyBank the reporting required by the Cash Collateral Order and the KeyBank Loan Agreement, as supplemented and amended by the Plan Supplemental Documents. Notwithstanding the foregoing, beginning in the 14th month following the Effective Date, the Debtor shall submit the required reports on a bi-weekly basis, absent the existence of a Plan Default.

**2.    <u>Class 2</u>: Trujillo Claim**

**Impaired.** Class 2 consists of the Trujillo Claim (the "<u>Class 2 Claim</u>"), which shall be treated as follows:

DEBTOR'S SEVENTH AMENDED PLAN OF
REORGANIZATION– Page 12

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Case 23-12303-TWD   Doc 335   Filed 05/10/24   Ent. 05/10/24 13:19:28   Pg. 12 of 33

The automatic stay contained in Bankruptcy Code § 362 shall cease on the Effective Date. The Debtor and the Trujillos shall adjudicate their claims against each other in the First Judicial District of Santa Fe County in New Mexico, under the law applicable to their disputes, including all claims arising under or related to the Asset Purchase Agreement (and any revisions or amendments thereto) among the Trujillos, The Emissary Group, LLC, and S360 M&A Holding Group Inc and/or the Debtor.

Upon any final, non-appealable judgment being entered against S360 M&A Holding Group Inc. or the Debtor, or other resolution of the claims by agreement, settlement, or otherwise (the "Final Trujillo Resolution") that results in a net affirmative liability of the Debtor to the Trujillos, such net affirmative liability shall constitute an Allowed Claim in favor of the Trujillos, to be paid as follows ,provided that such payment does not result in a violation of the Loan-to-Value Covenant : (1) to the extent that funds are paid on account of the Allowed Claim by the Debtor's insurance carrier, such funds will be paid to the Trujillos within ten days of the insurer's issuance of such payment; (2) if the Allowed Claim is $250,000 or less and is not to be paid by the Debtor's insurance carrier, the Debtor shall pay the Allowed Claim within 30 days; or (3) if the Allowed Claim is greater than $250,000 and is not to be paid by the Debtor's insurance carrier, the Debtor shall pay the Allowed Claim by making monthly payments (each, a "Trujillo Monthly Payment") on the first day of each month over a period of sixty months, commencing the first month following the Final Trujillo Resolution. Each Trujillo Monthly payment shall be equal to the amount of the Trujillos' Allowed Claim, divided by sixty. The Trujillos shall be entitled to the same payment terms as the Debtor if the Final Trujillo Resolution results in a net affirmative amount owed to the Debtor by the Trujillos. In the event the Trujillos are entitled to receive Trujillo Monthly Payments, in addition to such payments, following the Final Trujillo Resolution, the Trujillos shall be entitled to the Trujillo Pro Rata Bi-Annual Surplus Cash Distribution on or before 30 days following the end of each period in which there is Bi-Annual Surplus Cash until the Trujillos' Allowed Claim is fully satisfied.

If any payment of the Class 2 Claim would result in a violation of the Loan-to-Value Covenant, payment of such claim shall be deferred as provided for in Section VIII.I(1).

**3.** **Class 3**: **Allowed General Unsecured Claims**

**Impaired.** Class 3 consists of Allowed General Unsecured Claims that are not Administrative Convenience Claims (each, a "Class 3 Claim"). Class 3 Claims shall be paid in full as follows:

    a.    Interest. Interest shall accrue on the Class 3 Claims at the Federal Judgment Rate.

    b.    Monthly Payments. Beginning on July 15, 2024, the Debtor shall pay a total of $37,500 per month to Holders of Class 3 Claims on a pro rata basis until the Class 1 Claim has been fully paid. Upon the Class 1 claim being fully paid, the Debtor shall pay a total of $120,000 per month to Holders of Class 3 Claims on a pro rata basis until all Class 3 Claims have been fully paid.

DEBTOR'S SEVENTH AMENDED PLAN OF
REORGANIZATION– Page 13

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

c.   Bi-Annual Surplus Cash Distribution. In addition to the monthly payments, each Holder of a Class 3 Claim shall be entitled to a pro rata share of the Class 3 Bi-Annual Surplus Cash Distribution to be paid on or before the fifth of the month following any measuring period in which there is Bi-Annual Surplus Cash until Class 3 Claims have been fully satisfied, provided that such payment does not result in a violation of the Loan-to-Value Covenant. The Class 3 Bi-Annual Surplus Cash Distribution shall equal 15% of the total Bi-Annual Surplus Cash Distributions provided, however, that any Class 3 Bi-Annual Surplus Cash Distribution is subject to reduction by the amount of the Trujillo Pro Rata Bi-Annual Surplus Cash Distribution, if any.

d.   Class 4 Opt-In. Any Holder of Class 3 Claim may opt to reduce its Allowed General Unsecured Claim to $10,000 and be treated as a Class 4 Claim, rather than a Class 3 Claim (the "Class 4 Opt-In").

e.   Deferral of Payments.  If any payment of Class 3 Claims would result in a violation of the Loan-to-Value Covenant, payment of such claims shall be deferred as provided for in Section VIII.I(1).

**4.   Class 4:  Allowed Administrative Convenience Claims**

**Impaired.** Class 4 consists of Administrative Convenience Claims (each, a "Class 4 Claim"). The Debtor shall pay all Administrative Convenience Claims in full within 45 days following the Effective Date.  If any payment of Class 4 Claims would result in a violation of the Loan-to-Value Covenant, payment of such claims shall be deferred as provided for in Section VIII.I(1).

**5.   Class 5:  Oceguera Claim**

**Impaired.** Class 5 consists of the Allowed Claim of Oceguera (the "Allowed Oceguera Claim").

a.   Allowed Oceguera Claim. Oceguera shall hold an allowed unsecured claim in the amount of $2,000,000 which shall be deemed satisfied through a combination of salary adjustments and payments as described below.

b.   Base Salary. Beginning on January 1, 2025, Oceguera's annual base salary shall be $482,000.

c.   Monthly Payments. Commencing in July 2024, the Debtor shall make monthly payments to Oceguera on or before the 15th day of each month in the following amounts, provided that such payment does not result in a violation of the Loan-to-Value Covenant:

| Months | Monthly Amount |
|---|---|
| July 2024 – June 2026 | $25,000 |
| July 2026 - June 2027 | $55,000 |
| July 2027 - June 2028 | $25,000 |

DEBTOR'S SEVENTH AMENDED PLAN OF
REORGANIZATION– Page 14

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

d.    <u>Annual Payments</u>. The Debtor shall make two payments of $270,000 to Oceguera, one on September 1, 2024 and one on September 1, 2025, provided that such payment does not result in a violation of the Loan-to-Value Covenant.

e.    <u>Excess Nevada NOI</u>. Oceguera shall be entitled to the Excess Nevada NOI for a period of 36 months commencing in January 2024. For 2025 only, the payment of Excess Nevada NOI to Oceguera shall be reduced by the lesser of (i) $270,000 and (ii) the 2025 Excess Nevada NOI. Oceguera shall have full control of personnel decisions for the Debtor's Nevada operations.

f.    <u>Subsidiary Payment</u>. The Debtor shall cause its Canadian subsidiary to transfer $240,000 USD to Oceguera within 10 business days of the Effective Date. The Debtor and Oceguera shall cooperate to determine the most mutually beneficial structure of the transaction.

g.    <u>Class 5 Bi-Annual Surplus Cash Distribution</u>. Oceguera shall be entitled to the Class 5 Bi-Annual Surplus Cash Distribution, provided that such payment does not result in a violation of the Loan-to-Value Covenant.

h.    <u>Oceguera Retention</u>. Oceguera shall remain an employee of the Debtor consistent with the terms of the Oceguera Employment Agreement, as amended, through the final June 2028 payment (the "<u>Oceguera Committed Retention Date</u>"). Should Oceguera terminate his employment with the Debtor prior to the Oceguera Committed Retention Date in the absence of a Plan Default, the Debtor shall be entitled to liquidated damages of $100,000. To the extent Oceguera terminates his employment with the Debtor or the Debtor terminates Oceguera's employment, for cause, prior to the Oceguera Committed Retention Date, the Debtor shall not be required to make any further payments to Oceguera.

i.    <u>Board Seat</u>. Oceguera shall be a member of the Board and shall have the right to consent to an additional Board member, which consent shall not be unreasonably withheld.

j.    <u>Documentation</u>. The Oceguera Agreement and the Debtor's articles of incorporation and bylaws shall be amended prior to the deadline for objections to the Plan to conform to the terms herein. Such documentation shall be reasonably satisfactory to Oceguera.

k.    <u>Oceguera Employment Agreement</u>. The Debtor will assume the Oceguera Employment Agreement and the Oceguera Stock Agreement as of the Effective Date and will perform such agreements in accordance with their terms. Accordingly, any associated claim filed by Oceguera (the "<u>Class 5 Claim</u>") is unimpaired.

l.    <u>Deferral of Payments</u>. If any payment to the Class 5 creditor, other than under payments under subparagraph (b) and (e), would result in a violation of the Loan-to-Value Covenant, such payment shall be deferred as provided for in Section VIII.I(1).

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**6.** **Class 6**: **Allowed Sorenson Claim**

**Impaired.** Class 6 consists of the Allowed Sorenson Claim (the "Class 6 Claim"). The Holder of the Class 6 Claim shall be paid as follows:

a. Interest and Monthly Payments. The Class 6 Claim shall bear interest at the Federal Judgment Rate and, beginning on July 15, 2024, shall be paid as follows, provided that such payments do not result in a violation of the Loan-to-Value Covenant:

Beginning on July 15, 2024, the Debtor shall pay $40,000 per month to the Holder of the Class 6 Claim. Upon the Class 1 claim being fully paid, the Debtor shall pay $128,000 per month to the Holder of the Class 6 Claim until all Class 3 Claims have been fully paid. After payment of the Class 3 Claims, the Debtor shall pay $253,000 per month to the Holder of the Class 6 Claim up to June, 2027. After June 2027, the Debtor shall pay $245,000 per month to the Holder of the Class 6 Claim until the Class 6 Claim is fully paid.

Based on present expectations for the retirement of Class 1 and Class 3 Claims, the expected schedule of payments is:

| Months | Monthly Amount |
|---|---|
| July 2024 – June 2026 | $40,000 |
| July 2026 – February 2027 | $128,000 |
| March 2027 – June 2027 | $253,000 |
| July 2027 - through the month in which the Class 6 Claim is fully paid. | $245,000 |

b. Bi-Annual Surplus Cash Distribution. In addition to the Class 6 Payment, the Holder of the Class 6 Claim shall be entitled to receive the Class 6 Bi-Annual Surplus Cash Distribution within 30 days after the end of each period in which there is Bi-Annual Surplus Cash until the Class 6 Claim has been fully satisfied.

c. Claim Payment Priority. The Class 6 Claim shall not be subordinated nor subject to subordination under Bankruptcy Code § 510(b). However, in the event of an uncured Plan Default, after payment of the Class 1 Claim in full or with respect to any unencumbered assets of the estate, the Class 6 Claim and the Class 3 Claims shall equally split the total of the distributions to which the Class 6 Claim and Class 3 Claims would otherwise be entitled until Class 3 Claims are paid in full.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

d. <u>Deferral of Payments.</u>   If any payment to the Class 6 creditor would result in a violation of the Loan-to-Value Covenant, such payment will be deferred as provided for in Section VIII.I(1).

**7.     Class 7:  Allowed Interests in the Debtor**

All Interests in the Debtor shall be retained by the Holders of such Interests as of the Petition Date. No distributions shall be made to Holders of Interests on account of such Interests until Classes 1 through 6 have been paid in full, with the exception that distributions to Holders of Interests relating to pass through income tax shall be permitted (these distributions shall not exceed $250,000, total, during the pendency of the Plan). Until and unless Classes 2-6 are paid in full, the Interests held by Class 7 Holders shall not be diluted or otherwise have their value impaired by the Debtor. Nothing in the foregoing sentence shall be interpreted to impair or impede the Debtor ESOP, as that term is defined below.

## ARTICLE V.
## CLAIMS OBJECTIONS AND TREATMENT OF DISPUTED CLAIMS

**A.     <u>Administration of Claims</u>**

Except as otherwise provided for herein, each Claim shall be allowed or disallowed, as the case may be, in such amount as the Court shall determine, whether prior to or following Confirmation, and whether pursuant to the Plan or otherwise, upon such notice as the Bankruptcy Court or Bankruptcy Rules shall permit except that, after the Effective Date, the Debtor may settle or compromise any controversies regarding Claims without notice or further order of the Court.

**B.     <u>Defenses and Counterclaims Assigned to Reorganized Debtor</u>**

On the Effective Date, the Debtor shall be deemed to have assigned to the Reorganized Debtor, and the Reorganized Debtor shall be deemed to have acquired and become the successor to, all defenses, counterclaims and setoffs, whether equitable or legal, of the Debtor to Claims held or asserted to be held against the Debtor. Any objection to Claims must be filed and served in accordance with Bankruptcy Rule 3007; provided, however, that the foregoing limitations do not apply to any Claims filed subsequent to Confirmation.

**C.     <u>No Distribution on Disputed Claims</u>**

Notwithstanding any provision of this Plan specifying the time for payment of distributions to Holders of Claims, no payment or distribution shall be made to the Holder of a Disputed Claim until the time such Claim has been determined to be an Allowed Claim. Notwithstanding the existence of a Disputed Claim in a Class to which a distribution under the Plan is due, such distribution to other Holders in such Class shall not be affected by any delay in the resolution of the Disputed Claim. Upon the allowance of any Disputed Claim, the Holder shall be paid the amount that such Holder would have received had its Claim been an Allowed Claim on the Effective Date.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## ARTICLE VI.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Plan constitutes a motion by the Debtor to reject the executory contracts and unexpired nonresidential real property leases identified in Exhibit A to the Plan pursuant to Bankruptcy Code § 365(a) (each, a "Rejected Contract"). The Plan constitutes a motion by the Debtor to assume all other executory contracts and unexpired nonresidential real property leases of the Debtor (each an "Assumed Contract"). The Debtor believes that cure is owed with respect to the Assumed Contracts identified in Exhibit B to the Plan in the amounts identified therein, and proposes to pay those cure amounts within 15 days of the Effective Date.

The Plan establishes a deadline for parties to file claims based upon the rejection of an executory contract or unexpired lease. Within seven days of the Confirmation, the Debtor shall provide notice to each counterparty of a Rejected Contract that such counterparty must file a claim of any damages it asserts due to such rejection. Such notice shall provide no fewer than thirty days for the filing of a claim. Failure to timely file a proof of claim will result in the disallowance of any such claim. Any claim arising from the rejection of an executory contract or unexpired lease is a Class 3 Claim or Class 4 Claim, as the case may be, to the extent it is an Allowed Claim.

## ARTICLE VII.
## MEANS FOR EXECUTION OF THE PLAN

**A.**     **Sources of Funds for Distribution**

The Debtor and its Affiliates will fund the distributions under the Plan through revenue from ongoing operations.

**B.**     **Continued Corporate Existence and Vesting of Assets in the Debtor**

**1.**     **Continued Corporate Existence.** On the Effective Date, the Debtor shall continue to exist in accordance with the laws in the jurisdiction in which it was formed and pursuant to its articles of incorporation and bylaws in effect as of the Effective Date, except to the extent they are amended pursuant to the terms of this Plan.

**2.**     **Independent Director.** Pursuant to the following terms approved pursuant to the Debtor's Amended Governance Documents, the Debtor shall engage and retain an Independent Director on the Effective Date.

a.     Engagement and Term. Until all creditor classes have been paid in full, the Debtor shall engage an independent director (the "Independent Director"), whose compensation shall not exceed $20,000 per month absent a Plan Default, as defined below. The Independent Director, as an executive officer of the Debtor, shall hold this governance office until the Plan has been fully performed by the Debtor.

DEBTOR'S SEVENTH AMENDED PLAN OF
REORGANIZATION– Page 18

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

b. <u>Engagement, Involuntary Termination and/or Replacement</u>. The engagement, involuntary termination and/or replacement of the Independent Director shall be subject to the consent of KeyBank, Sorenson, and the Committee or its successor as designated in the Plan, which consent shall not be unreasonably withheld.

c. <u>Plan Oversight Duties</u>. The Independent Director shall have oversight authority to ensure the Debtor's timely execution and compliance with the Plan (the "<u>Plan Oversight Duties</u>"). The Independent Director shall have independent responsibility that is not subject to management consent, supervision, or control, in its performance and discharge of all Plan Oversight Duties, which shall include the following:

(1) Attending and participating in all weekly meetings of senior management as well as meetings of the board (voting as a director on all board matters concerning the Debtor);

(2) Reviewing all payrolls, before or after issuance;

(3) Reviewing and approving in advance all non-payroll disbursements over $15,000;

(4) Monitoring the Debtor's required levels of cash and Eligible Accounts Receivable, financial records, compliance with the Loan to Value Covenant and reporting concerning the Debtor's operations as well as its Plan performance, as well as enforcing the LTV Claims;

(5) Reviewing on a weekly basis billings, cash collections, employee commissions and Workforce Reduction events and monitoring and advising the Debtor to take such actions as may be reasonably necessary to maintain its compliance with, and performance of, its Plan obligations and to prevent actions that might unnecessarily cause a Plan Default, including without limitation any unnecessary or artificial reduction of the Bi-Annual Surplus Cash.

(6) Consulting with Debtor's counsel with respect to enforcing the Plan, all post-confirmation matters concerning the Plan, including without limitation claims allowance disputes and the Debtor's claims or other financial interests in the Dotzauer Bankruptcy Case;

(7) All other matters concerning the Debtor's timely and full performance of all its Plan obligations, including without limitation prompt required payments and distributions to Classes 1 through 6; and

(8) Enforcement of Plan Default Remedies as CRO upon a Plan Default, as defined below.

DEBTOR'S SEVENTH AMENDED PLAN OF REORGANIZATION– Page 19

Bush Kornfeld llp
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

d.  Compliance with State Law. Nothing in the foregoing shall be deemed to excuse or waive the Independent Director's fiduciary or other statutory duties under Washington state law.

e.  Required Insurance. The Independent Director, and, if applicable, the CRO, shall be named insureds under the Debtor's existing directors and officers insurance policy or under a separate policy with the same or similar terms and limits as the Debtor's existing insurance policy. The Debtor's Amended Governance Documents shall also identify the Independent Director and the CRO as indemnitees under provisions reasonably acceptable to the Independent Director, the Debtor, KeyBank and the Committee.

**3.  Expanded Board.** Prior to the Effective Date, and pursuant to the Debtor's Amended Governance Documents, there shall be a Board Reconstitution of the Debtor's board of directors (however constituted, the "Board") and the Board shall be expanded to include five directors, one of which will be the Independent Director. Except as otherwise provided in the Plan or Amended Governance Documents, each Board member shall have an equal vote. The Board's duties will include each of the following, and, unless otherwise provided in this Plan, any required Board action shall only be taken by a majority of the Board that includes the Independent Director:

a.  Setting Executive Compensation. The Amended Governance Documents shall set and disclose the compensation to be paid the Independent Director (and CRO) as well as the Debtor's other officers and directors as of the Effective Date, which compensation shall not violate any provisions of this Plan.  The Board, with the Independent Director's required participation, will have the sole authority to increase or decrease the salaries and/or compensation for the Debtor's Chief Executive Officer, President, Chief Financial Officer and Chief Operating Officer (the "Executive Compensation") and Mr. Dotzauer (to the extent he is no longer an executive).  Notwithstanding the foregoing, the Board shall not have authority to decrease the compensation of the Independent Director and CRO nor to increase the Executive Compensation or the compensation of Dotzauer above the Executive Compensation Limit, as defined in the Plan, until obligations to Holders of Allowed Claims have been fully satisfied.

b.  Plan Implementation. The Board, with the Independent Director's required participation, shall be responsible for implementing and ensuring the Debtor's compliance with terms of the Plan.

c.  Budgeting. The Board, with the Independent Director's required participation, shall be responsible for formulating, reviewing and enforcing the expenditure categories in the Debtor's operating budget.

d.  Corporate Strategy. The Board, with the Independent Director's required participation, shall be responsible for formulating and approving the Debtor's corporate strategy.

**4.  Board Fiduciary Duties and Duty to Report Any Plan Default.** The Board of Directors shall have fiduciary duties to Holders of Allowed Claims and Interests under the Plan and

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

shall have an ongoing obligation to report to the Debtor's creditors any event of default by the Debtor under the Plan.

**5.      CRO.** In the event the Independent Director determines a Plan Default is not a Curable Plan Default, the Independent Director shall automatically become the Debtor's Chief Restructuring Officer (the "<u>CRO</u>") and, while retaining the duties of the Independent Director, the CRO shall also be vested with exclusive authority to oversee and conduct appropriate remedies ("<u>Plan Default Remedies</u>"), without the requirement of separate Board approval, including the following:

a.      The prompt sale of the Debtor's business or assets as a going concern, if a closing of such sale can be promptly achieved on or before the later of 120 days from the date of the Plan Default or such later date as may be agreed upon in writing by KeyBank, in its sole discretion. The Plan shall include provisions binding on the classes that in the event of an asset sale adopted by the CRO as a Plan Default Remedy, the holders of Claims in Classes 2 through 6 shall be barred from asserting any successor liability or similar claims against the asset purchaser;

b.      In the event a sale is not feasible or timely accomplished pursuant to subparagraph a) above, the formulation and execution of an orderly liquidation plan and winding up of the affairs of the Debtor;

c.      In the event a sale is not accomplished pursuant to subparagraph a) above, cooperation with KeyBank in its enforcement of its rights and remedies under Article 9 and other remedies under the Plan or applicable law, including assistance in the collection of accounts receivable and liquidation of all collateral securing the Class 1 Claim.

d.      The filing and conduct of any legal proceedings on behalf of the Debtor that are in the best interests of its creditors and in furtherance of the Plan;

e.      Enforcement of the Plan Reserved Claims and the LTV Claims; and

f.      The proper distribution of all cash proceeds from Plan Default Remedies in accordance with the Plan.

**6.      Vesting of Assets in the Reorganized Debtor.** Except as otherwise provided in the Plan, on and after the Effective Date, each item of property of the Debtor, including all claims, rights and causes of action and any property acquired by the Debtor shall vest in the Reorganized Debtor free and clear of all Claims, liens, charges, other encumbrances and interests except the KeyBank Security Interests and the liens, charges and other encumbrances which the Debtor or Reorganized Debtor is required to grant or continue pursuant to Article IV of the Plan. On and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire and dispose of property without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by the Plan or the Confirmation Order.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**7.** **Debtor ESOP.** The Debtor will implement an ESOP during 2024 (the "Debtor ESOP") that will provide for the transfer of the Interests in the Debtor to an employee trust (the "ESOP Trust") for the benefit of employee participants on terms that are consistent with the provisions of this Plan. So long as any Allowed Claims remain unsatisfied, any ESOP to be formed by the Debtor shall comply with the following:

a. Not hold any equity securities of the Debtor other than stock (the "Restricted Shares") subject to the terms set forth herein, including without limitation the voting authority of the CRO as provided above and as needed to effectuate a Plan Default Remedy;

b. Other than Restricted Shares, no cash or other property of the Debtor shall be contributed to the ESOP;

c. The Debtor and/or ESOP may obtain a stock acquisition loan (the "ESOP Restricted Stock Acquisition Loan") or loans, provided such loans are fully subordinated to all Allowed Claims and the Debtor shall make no payments with regard to such loans until all Allowed Claims are paid in full;

d. The Debtor and the ESOP shall distribute no cash or other property from or relating to the ESOP, other than i) distribution of the Restricted Shares to Debtor employees; ii) the cash payment of the Authorized ESOP Professional Fees, as defined below; and iii) subject to the restriction in subparagraph f below, the distribution of cash proceeds, if any, of the ESOP Restricted Stock Acquisition Loan to current holders of the Debtor's equity securities as purchase money for such shares (KeyBank reserving its rights concerning such funds paid to Dotzauer in his Chapter 11 case);

e. For the avoidance of doubt, any indebtedness incurred by the Debtor or the ESOP in connection with the ESOP transaction shall be limited to authorized ESOP Restricted Stock Acquisition Loans; and

f. Under the Plan, and except as otherwise provided herein, no equity security holder shall receive or be entitled to any payment or other distribution of cash from the Debtor or the ESOP until all Allowed Claims have been fully satisfied. The Debtor shall not pledge any security interests or priority rights in the Debtor's assets in support of the ESOP Restricted Stock Acquisition Loans.

**8.** **Cooperation.** The Debtor, Dotzauer and Oceguera shall cooperate with KeyBank and the Committee in the prompt preparation of the Plan Supplemental Documents and such prompt approvals by the Court of such documentation at confirmation as is required under the Plan. In the event of any dispute prior to the Effective Date regarding the terms and provisions of the Amended Governance Documents, any other Plan Supplement Documents or any other documents or actions necessary to implement and consummate the Plan, the Hon. Marc Barreca or such other arbitrator appointed by the Court shall arbitrate and resolve such dispute.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## C.  Cancellation of Indebtedness

On the Effective Date, except for the purpose of evidencing a right to distribution under the Plan, any notes or other instruments or documents evidencing or creating any indebtedness or obligations of, or interest in, the Debtor, except assumed executory contracts, and/or such notes or other instruments evidencing indebtedness or obligations of the Debtor that are unimpaired, reinstated, or amended and restated under the Plan, shall be cancelled and terminated and of no further force or effect.

## D.  Restriction Against Incurring Additional Debt

Until Allowed Claims have been fully satisfied, the Debtor will not incur additional long-term debt or grant any security interest or lien in its assets other than the following:

**1.  KeyBank.** The Debtor shall be entitled to refinance the Class 1 Claim, provided, however that the refinance does not result in an obligation to the refinancing lender in an amount materially greater than the amount being refinanced or provide the refinancing lender with any security or priority or rights senior to Classes 2-6 beyond the rights granted to Class 1 under the Plan. The restriction described herein shall not apply to the existing KeyBank Security Interest as continued pursuant to the Plan.

**2.  ESOP.** The debt, if any, the Debtor incurs in connection with the ESOP shall only be debt that complies with the terms of this Plan, including but not limited to the terms of Section VII.B.7 above.

## E.  Notice of Occurrence of Effective Date

Promptly after the occurrence of the Effective Date, the Debtor will file notice thereof.

## F.  Retention of Reserved Claims and Causes of Action

Unless specifically waived in the Plan, all rights, claims and causes of action, whether equitable or legal, of the Debtor against all persons are reserved for and assigned to the Debtor, including without limitation all rights, claims and causes of action of the Debtor arising under §§ 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or under applicable non-bankruptcy law, for the recovery of avoidable preferences, fraudulent transfers or other conveyances (the "Plan Reserved Claims"). For avoidance of doubt, the Plan shall not be construed as a waiver of any potential claims including, but not limited to, against any potential third parties with respect to any post-petition transfers and/or any potential claims against insiders. The Plan Reserved Claims shall include the Debtor's right to recover any payments or distributions made in violation of the Loan-to-Value Covenant. The Plan Supplemental Documents shall create and perfect a valid security interest in the Plan Reserved Claims and the Reorganized Debtor shall supplement and document a similar grant of a security interest in any post-confirmation commercial tort claims which may arise post-confirmation in favor of the Debtor.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

### G. Compensation Limitations

**1. Executive Compensation.** Until such time as Class 1 has been fully satisfied, Dotzauer's annual gross compensation, shall be limited to $460,000 and thereafter, shall be limited to $640,000 until Classes 2-6 have been fully satisfied (the "Executive Compensation Limit") provided, however that Dotzauer shall also be entitled to quarterly P&L commission and origination commission for new work originated after the Effective Date on the same terms as other employees, subject to review and approval of the Independent Director as defined below. The Debtor shall not make payments on account of Dotzauer's boat or car payments. The Executive Compensation Limit shall not include and shall not limit reimbursable Debtor business expenses, provided that the Board shall exercise oversight and approval of such expenses and any company credit usage of Dotzauer. If the Debtor defaults on payments under the Plan, the Executive Compensation Limit shall be reduced to $300,000, inclusive of all salary and commissions.

**2. Employee Compensation.** Until such time as Classes 1-6 have been fully satisfied, the Debtor shall not increase the salary of any employee or increase overall employee compensation unless all payments that have become due prior to the date of the proposed salary increase have been paid in full. The Debtor shall not make vehicle or vessel payments as part of any employee's compensation. Any increase in overall employee compensation must be approved by the Board of Directors, the majority of which must include the Independent Director. The Plan does not prohibit the Board from providing annual adjustments to any employee's salary to match cost of living increases, as measured by the Consumer Price Index so long as all payments due to creditors under the Plan have been made.

### H. Plan Financial Forecast and Post-Confirmation Financial Reporting.

The Debtor shall file of record a revised cash flow pro forma forecast, collateral projection and operating projection covering the Debtor's and Affiliates' operations through calendar year 2028 and demonstrating the Debtor's ability to fully perform all of its payment and other obligations under the Plan. Thereafter, and until Classes 1-6 have been fully satisfied, the Debtor will upload to a secure file sharing service its monthly (1) balance sheet, (2) profit and loss statement, (3) cash flow statement (including a budget-to-actual variance report), (4) statement of aged receivables, (5) statement of aged payables and (6) reports of compensation, including specific accounting of compensation and transfers of any kind to Dotzauer (each of the foregoing, a "Post-Confirmation Financial Report") no later than the fifteenth day of the following month. Creditors will be given access to the file sharing service upon request.

### ARTICLE VIII.
### MISCELLANEOUS PROVISIONS

### A. Bi-Annual Surplus Cash

As set forth above in Section IV.B.1.e, forty percent (40%) of the Debtor's Bi-Annual Surplus Cash, if any, shall be paid to KeyBank. The remaining sixty percent (60%) shall be allocated as follows: fifteen percent (15%) shall be payable to the Holders of Class 3 Claims (the "Class 3 Bi-

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Annual Surplus Cash Distribution"); fifteen percent (15%) shall be payable to the Class 6 creditor (the "Class 6 Bi-Annual Surplus Cash Distribution") and fifteen percent (15%) shall be payable to the Class 5 Creditor (the "Class 5 Bi-Annual Surplus Cash Distribution"). The Debtor may retain the remaining fifteen percent (15%) of Bi-Annual Surplus Cash as working capital for its operations but is not restricted from using its portion of Bi-Annual Surplus Cash, if any, to fund payments on the Debtor's obligations to any classes of creditors under the Plan, provided the distribution of such funds does not cause an immediate or reasonably foreseeable Plan Default. Bi-Annual Surplus Cash shall mean Cash on hand in excess of $3,000,000, less the amount of Excess Nevada NOI payable to Oceguera, as of December 31, 2024 and as of the following June 30th and December 31st of each Plan year thereafter until all Allowed Claims are paid in full. The Debtor's calculation of Bi-Annual Surplus Cash shall be determined by the Surplus Cash Calculation as defined and set forth in the <u>Plan Supplemental Documents</u> and as determined by Independent Director. Any Debtor Plan payments required under this Section shall occur under the supervision of the Independent Director. For the avoidance of doubt, Bi-Annual Surplus Cash excludes any distributions under the Plan that would result in a violation of the Loan-to-Collateral Covenant.

**B.**     <u>**Unnegotiated Distribution Checks**</u>

Ninety (90) days after any distribution to any unsecured creditor by the Reorganized Debtor provided for herein, the Reorganized Debtor shall stop payment on any check on such distribution remaining unpaid to a Holder of an Allowed Claim and funds shall be returned to the Reorganized Debtor. The Reorganized Debtor shall make one further attempt to reach such Holder of the Allowed Claim on which such check was issued in order to ensure the check is sent to the correct location, and will reissue the check one time. In the event the Reorganized Debtor stops payment on such reissued check pursuant to this paragraph, then from and after the date of such cancellation, the Holder of the Allowed Claim on account of which the check was reissued shall forfeit its right to receive such specific payment and such holder's Allowed Claim shall be deemed reduced by the amount of such payment. In the event the Reorganized Debtor is required to reissue three payments and the Holder of the Allowed Claim fails to negotiate a fourth payment, then the Holder of such Allowed Claim shall be entitled to receive no further distributions on account the claim and such Holder's Allowed Claim shall thereupon be deemed satisfied in full.

**C.**     <u>**Mailing List; Returned Distribution Checks**</u>

The official listing of Creditor identities and mailing addresses is maintained by the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Western District of Washington (the "<u>Official Mailing List</u>"). It shall be the obligation of each Creditor and/or party in interest to assure that the Official Mailing List is current and accurate as to each such person or entity. In the event that a distribution check, that has been properly posted to the Creditor's address as set forth in the Official Mailing List, is returned as undeliverable by the United States Postal Service, the Reorganized Debtor shall be authorized, but not required, to void such check with the applicable funds becoming subject to further distribution pursuant to the Plan, subject to the requirements in paragraph VIII.B. above.

DEBTOR'S SEVENTH AMENDED PLAN OF
REORGANIZATION– Page 25

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**D.**    __Administrative Claim Bar Date__

The deadline for submission of all Claims entitled to priority pursuant to § 503(b) of the Bankruptcy Code incurred prior to Confirmation, with the exception of fees and costs of Professional Persons, shall be thirty (30) days following the Effective Date. Failure to file a Claim by this date shall conclusively bar the claimant from asserting his Claim, which Claim shall be forever discharged.

**E.**    __Payments Shall Be Timely__

The Reorganized Debtor shall timely make all payments required under this Plan. Without limiting the generality of the foregoing, the Reorganized Debtor shall be responsible for the timely payment of quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) following Confirmation until the case is closed. After Confirmation, the Reorganized Debtor shall serve on the United States Trustee quarterly a financial report for each quarter (or portion thereof) the case remains open. The financial report shall include a statement of all disbursements made during the course of the relevant quarter, whether or not pursuant to the Plan.

**F.**    __Employment and Compensation of Professionals__

The Reorganized Debtor shall be authorized to employ Professionals following Confirmation upon such terms as the Reorganized Debtor deems reasonable and appropriate without further notice or order of the Court. So long as there is no Plan Default and payment of the following would not result in a Plan Default, following the review and approval of the Independent Director, the Debtor shall be authorized to pay the following fees and costs without further order of the Court:

1.    Reasonable fees and costs of ESOP legal professionals, subject to an approved professional fee budget reviewed and approved by the Debtor and the Independent Director (the "__Authorized ESOP Professional Fees__");

2.    Reasonable fees and costs of legal counsel for the Reorganized Debtor and the Independent Director; and

3.    Payment of any applicable United States Trustee quarterly fees.

**G.**    __Treatment of Negotiable Instruments__

Any negotiable instrument held by the Holder of a Claim shall be deemed exchanged, canceled or satisfied, as the case may be, on the Effective Date.

**H.**    __Stay of Confirmation Order Shall Not Apply__

The stay of enforceability of the order of Confirmation pursuant to Bankruptcy Rule 3020(e) shall not apply, and the order of Confirmation shall be enforceable according to its terms absent further order of the Court.

DEBTOR'S SEVENTH AMENDED PLAN OF
REORGANIZATION– Page 26

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**I.** **Event of Default; Consequence of Default**

Any of the following (each, a "Plan Default") shall be deemed to be an event of default under the Plan, provided that only the Independent Director, CRO or KeyBank (as to a Plan Default arising under subpart 6 below relating to the KeyBank Loan Documents) may declare Plan Default, except as otherwise permitted in subpart 1) below:

1.     The Debtor shall fail to make a payment or distribution required under the Plan on or before its due date; provided that so long as the Class 1 claim remains unpaid but the Debtor is not in default of the payments required to be made to the Class 1 creditor, the Debtor's failure to make a required payment or distribution under the Plan to any Holders of Class 2 through 7 Claims or persons other than the Holder of the Class 1 Claim, due to the fact that such payment or distribution would violate the Loan-to-Value Covenant (a "Prospective Covenant Default"), such otherwise required Plan payments under Section IV.B of the Plan shall be deemed deferred (the "Plan Deferred Payments"). The Debtor shall not resume scheduled payments on such claims until the earlier of (i) payment in full of the Class 1 Claim, provided that the Annual Payments to the Class 5 creditor provided in Section IV.B.5 may be paid to the Class 5 creditor prior to payment in full of the Class 1 creditor, but only to the extent such payments would not otherwise trigger a Loan-to-Value Covenant default; and (ii) such time as making such scheduled payment would not trigger a Loan-to-Value Covenant default. To the extent any payments or distributions have been deferred under this section, upon the payment in full of the Class 1 Claim, the payment schedule for all deferred classes will be adjusted and resume to provide for the make-up or partial make-up of any Plan Deferred Payments under this provision. If any payments or distributions have been deferred under this section, the Debtor may make up and pay such Deferred Payments ("Catch-Up Payments") if (i) the Debtor is not in default of the payments required to be made to the Class 1 creditor, and (ii) after providing for such Catch-Up Payments, the total of the Debtor's Cash plus Eligible Accounts Receivables would be greater than or equal to two times the balance of KeyBank's Allowed Secured Claim. If the amount owed on the Class 1 Claim is less than $2,000,000 but greater than $0, and the value of KeyBank's Security Interests in the Debtor's Cash plus Eligible Accounts Receivable is equal to or greater than two times the then balance of the KeyBank Allowed Secured Claim, then any Holder of a Class 2-6 claim shall have the right to provide notice of a Plan Default if the Debtor has deferred and not paid payments to such Holder in an amount greater than or equal to three Plan Deferred Payments. After payment in full of the Class 1 Claim, thereafter if the Debtor fails to make a plan payment to any Holder of a Class 2-6 Claim, such Holder shall have the right to declare a Plan Default.

2.     The Debtor shall fail to provide a Post-Confirmation Financial Report on or before its due date;

3.     The Debtor ESOP shall fail to be implemented by December 31, 2024 in accordance with the terms of this Plan;

4.     The Debtor fails to abide by the compensation restrictions provided in Article VII.G of the Plan;

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

5.     The constitution of the Debtor's Board of Directors or its performance of its duties (including the duties required of the Independent Director) shall not comply with the Plan requirements contained in Article VII.B.3;

6.     The Debtor shall violate any covenant contained in this Plan or any provisions of the KeyBank Loan Documents, including an event of default under the terms and provisions governing the Class 1 Claim;

7.     The Amended Governance Documents shall be modified, amended or altered in a manner that is contrary to requirements of the Plan;

8.     The Board of Director's determination that due to a Workforce Reduction event or other cause, the Debtor's business operations are no longer financially viable; and

9.     The Debtor shall fail to satisfy any other material obligation under the Plan.

In such an event, the party declaring such default shall provide written notice of the alleged default to the Independent Director (or CRO, as the case may be), the Reorganized Debtor, KeyBank, Sorenson and their respective attorneys (the "Default Notice"), at each of the following addresses, which shall be deemed received (i) if by Federal Express or expedited delivery service, on the confirmed date of delivery; (ii) if by electronic mail, on the date of the transmission of such electronic mail; and (iii) if by U.S. Mail, on the third Business Day thereafter:

To the Debtor:

> Strategies 360, Inc.
> Attn : Ron Dotzauer
> Chief Executive Officer
> Strategies 360
> 1505 Westlake Ave. N. #1000
> Seattle, WA 98109

And:

> Thomas A. Buford
> Christine M. Tobin-Presser
> Bush Kornfeld LLP
> 601 Union Street, Suite 5000
> Seattle, WA 98101-2373
> Phone: 206-292-2110
> Fax: 206-292-2104
> Emails: tbuford@bskd.com and ctobin@bskd.com

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

To KeyBank:

        KeyBank National Association
        Attention: Dale Conder
        702 W. Idaho Street
        Boise, ID 83702
        Email: Dale_Conder@keybank.com

And:

        Bruce W. Leaverton
        Daniel T. Hagen
        Karr Tuttle Campbell
        701 Fifth Avenue, Suite 3300
        Seattle WA 98104-7055
        E-mails: bleaverton@karrtuttle.com and dhagen@karrtuttle.com

To Sorenson

        Eric Sorenson
        2309 N 62nd St.
        Seattle, WA 98103
        ericedsorenson@gmail.com

And:

        Michael J. Gearin
        CJ Voss
        K&L Gates
        925 Fourth Avenue
        Suite 2900
        Seattle, WA 98104
        mike.gearin@klgates.com
        cj.voss@klgates.com

Unless promptly cured, the Independent Director (or CRO, as the case may be) shall provide notices of a Plan Default to holders of Allowed Claims that remain unpaid as of the date of a Plan Default.   The Independent Director (or CRO, as the case may be) shall be exclusively responsible to address and determine if any such Plan Default may be subject to prompt cure or other resolution (a "Curable Plan Default") and take immediate and appropriate remedial action on behalf of the Debtor under this Plan, the Plan Supplemental Documents and applicable law.  Such determinations shall be protected under the business judgment rule, provided that any holder of an Allowed Claim disputing the actions or inactions of the Independent Director (or CRO, as the case may be) with respect to a Plan Default or any other matter under the Plan, may challenge such actions or inactions by seeking an

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

order of this Court to enforce the Plan, provided further that the prevailing party in such a proceeding shall be entitled to an award of its attorneys' fees and costs.

## ARTICLE IX.
## PLAN IS BINDING; DISCHARGE

Except as specifically provided in this Plan or in the Confirmation Order:

1.     The distributions made to the various Classes of Creditors as provided for in this Plan shall be in full and complete satisfaction of their Allowed Claims and Allowed Interests. The terms of this Plan and the Confirmation Order shall be binding on all parties regardless of whether or not (a) the party's Claim was scheduled, (b) a Proof of Claim was filed, (c) the Claim is an Allowed Claim, (d) the party's Claim was in a Class that was impaired, or (e) the Holder thereof voted to accept the Plan.

2.     Confirmation shall operate, upon the Effective Date, as a discharge of any and all debts and Claims against the Estate and the Debtor or Debtor-in-Possession that arose at any time prior to Confirmation to the fullest extent permitted by Bankruptcy Code § 1141. The discharge of the Debtor and the discharge of Claims against the Debtor, whether asserted against the Debtor or the Debtor-in-Possession shall be effective as to each Claim, regardless of whether or not (a) the party's Claim was scheduled, (b) a Proof of Claim was filed, (c) the Claim is an Allowed Claim, (d) the party's Claim was in a Class that was impaired, or (e) the Holder thereof voted to accept the Plan.

## ARTICLE X.
## MODIFICATIONS OF THE PLAN

Pursuant to the provisions of § 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor reserves the right to modify or alter the provisions of the Plan at any time prior to or subsequent to Confirmation.

## ARTICLE XI.
## RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT

Notwithstanding Confirmation, until entry of a final decree, the Bankruptcy Court shall retain jurisdiction to ensure that the purposes and intent of the Plan are carried out. Without limiting the generality of the foregoing, the Court shall retain jurisdiction for the following purposes:

1.     Fixing and allowing any Claim as a cost and expense of the administration of the Bankruptcy Case;

2.     Re-examining any Claim that has been allowed;

3.     Hearing and determining objections to Claims. The failure of the Debtor to object to, or to examine any Claim for the purpose of voting, shall not be deemed to be a waiver of the Debtor's right to object to, or re-examine any Claim in whole or in part;

DEBTOR'S SEVENTH AMENDED PLAN OF
REORGANIZATION– Page 30

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

4.     Hearing and determining any action brought to avoid any transfer of an interest of the Debtor in property, or any obligation incurred by Debtor, that is avoidable pursuant to applicable law;

5.     Hearing and determining all causes of action, controversies, disputes, or conflicts between or among the Debtor, and any other party, including those that were pending prior to Confirmation;

6.     Hearing and determining all questions and disputes regarding title to the property of the Estate;

7.     Correcting any defect, curing any omission, or reconciling any inconsistency in the Plan or the Order of Confirmation as may be necessary to carry out the purpose and intent of the Plan;

8.     Issuing any order necessary to implement the Plan or Order of Confirmation, including, without limitation, such declaratory and injunctive orders as are appropriate to protect the Debtor, the Estate and the Reorganized Debtor from actions of Creditors, or other parties-in-interest;

9.     Hearing and determining any dispute relating to the terms or implementation of the Plan or Order of Confirmation, or to the rights or obligations of any parties-in-interest with respect thereto; and

10.     The modification of the Plan after Confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code in accordance with Article X above.

11.     Enforcement of the Plan and any Plan Default Remedies.

## ARTICLE XII.
## ENTRY OF CLOSING ORDER BY THE BANKRUPTCY COURT

The Bankruptcy Court shall enter an order concluding and terminating the Bankruptcy Case upon application of the Reorganized Debtor.

DATED this 2nd day of May, 2024.

STRATEGIES 360, INC.

By /s/ Ron Dotzauer
    Ron Dotzauer
    Its Chief Executive Officer

DEBTOR'S SEVENTH AMENDED PLAN OF
REORGANIZATION– Page 31

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

# **EXHIBIT A**

None

# **EXHIBIT B**

None